[Civil No. 1828.   Filed May 12, 1921.]

[197 Pac. 892.]

## SOMERTON STATE BANK, a Corporation, Appellant, v. J. H. MAXEY and MARY MAXEY, Appellees.

1. BILLS AND NOTES—PRESENTMENT FOR PAYMENT TO MAKER NOT PREREQUISITE TO BRINGING OF SUIT.—It is not a prerequisite to the bringing of a suit upon an indebtedness represented by a promissory note, nor to any other formal demand for payment whereby the holder of the note seeks to recover from the maker thereof, that the note be produced and presented for payment, presentment for payment being usually necessary to hold an indorser when the note is dishonored, but never necessary to hold the maker.

2. TENDER — MAKER COULD PREVENT SUIT BY MAKING TENDER. — The maker of a note could prevent suit being brought upon it by making valid tender of the indebtedness.

3. TENDER—MAKER'S OFFER TO MAKE TENDER DID NOT PREVENT PAYEE BANK FROM BRINGING SUIT.—Where the maker of a note stated that he would make a tender of payment if the payee bank would produce the note, there was no good tender of payment preventing the payee bank from bringing suit.

4. TENDER—WAIVER OF TENDER BY PAYEE CANNOT BE AVAILED OF BY MAKER WHO DID NOT HAVE MONEY.—Waiver of tender by the payee bank cannot be availed of by the maker of a note where at the time he had not the ability to produce the money to pay.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Reversed.

Mr. Earl Anderson, for Appellant.

Messrs. Alexander, Christy & Baxter, for Appellees.

1. On necessity of actual presentment of commercial paper to effect its dishonor, see note in 13 L. R. A. (N. S.) 303.

On effect of statement by indorser to holder that party primarily liable cannot pay, as waiver of presentment to latter, see note in 27 L. R. A. (N. S.) 516.

JENCKES, Superior Judge.—On March 28, 1919, the appellee (defendant below) was indebted to appellant (plaintiff below) upon four promissory notes aggregating the principal sum of $4,500, payable at Somerton, Yuma county, Arizona, and then long past due. Payment had been demanded many times. Appellee had harvested a cotton crop in Yuma county, which, prior to said date, had been removed by him to Maricopa county to be ginned and marketed. This crop had been ginned and baled, and was on, said date in storage at Mesa and at Tempe in Maricopa county. Appellee had theretofore successfully withstood demands for payment of the indebtedness by representing to appellant that he would liquidate it when he sold his cotton. Appellee had on June 13, 1918, given appellant a chattel mortgage upon his said cotton crop to secure other indebtedness owing by him to appellant aggregating the principal sum of $6,000, which said other indebtedness and mortgage were outstanding and long past due on March 28, 1919. The indebtedness of $4,500 was wholly unsecured. On March 28, 1919, appellant sent copies of all the promissory notes and the mortgage to attorneys Hawkins & Anderson at Phoenix, Arizona (the originals being retained at Somerton) with instructions to record the mortgage in Maricopa county and—

"to look into the situation as far as you can at this time and call by phone upon receipt of this letter, and we will determine just what action to take."

This communication was received by Hawkins & Anderson on March 31st, and by phone on that day, upon being informed by them that appellee was negotiating a sale of his cotton, appellant directed Hawkins & Anderson to attach the cotton to secure the $4,500 indebtedness. This they proceeded to do, and brought this action for that purpose on April 2d, at

10 A. M.   On April 1st, appellee approached appellant at Somerton for the purpose of arranging for a settlement of the notes through a bank of Yuma, and was informed that the matter was in the hands of Hawkins & Anderson at Phoenix, and that he must settle with them there. Appellee immediately proceeded to Phoenix to settle with Hawkins & Anderson, and about 9 A. M., April 2d, his attorney called upon them for that purpose. Upon learning that the original notes and mortgages were at Somerton, appellee's attorney requested that they be forwarded to Phoenix, together with a release of the chattel mortgage, so that they could be paid upon sale of the cotton by appellee. The notes and mortgage were accordingly sent to the Valley Bank at Phoenix, Arizona, arriving there on April 4th. On that day appellee called at the Valley Bank and tendered the principal, interest, court costs, and the bank's exchange charge. This tender was refused, because it did not include any sum as attorney fees. Appellee declined to pay any attorney fee.

The promissory notes in question each contain the following provision governing the payment of attorney fees:

"Should this note not be paid punctually, and an attorney be employed, the makers and indorsers of this note severally and jointly agree to pay a reasonable sum in addition to the sum then unpaid as attorney's fees. . . . Attorney's fees to be fixed by the judge of the court."

The trial court construed this provision of the notes to mean that an attorney fee accrued only in the event of suit being brought to recover upon the notes, and then held that, as appellee had offered to pay the principal and interest of the notes before this action was filed, the action was unnecessarily brought, and that for such reason appellant was not entitled

to recover attorney fees nor any interest upon the principal indebtedness after the fourth day of April, nor any costs accruing thereafter, and rendered judgment in favor of appellant for the principal indebtedness, with interest and costs to April 4th only.

Appellant presents ten assignments of error, comprising two main propositions: (1) That the trial court's construction of the agreement concerning attorney fees was erroneous; and (2) that even if it were correct, appellant was entitled to recover attorney fees and interest and costs subsequent to April 4th, under the evidence as presented by the record.

It is not necessary for us to determine in this case whether or not the trial court's construction of the agreement was erroneous, for even if it were correct the case must be reversed because the judgment is not supported by the court's findings of fact.

The court concluded as a matter of law that appellee's so-called "offers to pay" the principal and interest on the first and second days of April, before the suit was filed, and the tender thereof, with accrued costs, on April 4th, subsequent to the filing of the suit, precluded a recovery by appellant of more than the amount so "offered" and tendered. That such conclusion was based on a misconception of the law applicable to the facts found by the court appears from the remarks of the court at the termination of the trial, from which we quote the following:

"On the morning of the 2d, Mr. Maxey, by his counsel, goes to Hawkins & Anderson and wants to pay the notes. He asks if the notes are here. He was told they were not here. *Of course he could not make a tender then, when he could not get the notes.* . . . The suit is a demand in court, and a demand without the note made anywhere is useless. . . . You had to produce the note when you demand payment. . . . *When you make the demand you must present the note.*" (Italics ours.)

It is not a prerequisite to the bringing of a suit upon an indebtedness represented by a promissory note, nor to any other formal demand for payment whereby the holder of the note seeks to recover from the maker thereof, that the note be produced and presented for payment. "Presentment for payment" is usually necessary to hold an indorser when the note is dishonored, but it is never necessary to hold the maker. See 8 Corpus Juris, 527, par. 741, and 3 R. C. L. 1174, par. 392. Were the law otherwise, a creditor who had lost the note would be barred from recovering the indebtedness, and one residing at a distance from the debtor and his property (as in this instance) would be prevented from taking speedy action to protect himself by attachment proceedings. Appellee's indebtedness to the bank was long past due, and many demands had been made upon him for payment. He was about to dispose of his cotton. Far from being unnecessary, it was essential to the protection of the bank's interests that the cotton be speedily attached. That could only be accomplished by filing suit. The indebtedness being long past due, the bank had the right to bring suit upon it at any time. Appellee could prevent this by making a valid tender of the indebtedness. Ample opportunity was given appellee to do so before the suit was filed. All that he did theretofore amounted to nothing, and was entirely abortive as a valid tender.

"Tender is an offer to perform a contract, or to pay money, coupled with a present ability to do the act. It imports, not merely the readiness and the ability to pay or perform at the time and place mentioned in the contract, but also the actual production of the thing to be paid or delivered over, and an offer of it to the person to whom the tender is to be made; and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." 38 Cyc. 131.

XXII Ariz.—24

Appellee does not contend that at any time before the filing of the suit he actually tendered anything to appellant or to appellant's attorneys, but seeks to avoid the consequences of his omission to do so by taking advantage of appellant's inability to immediately produce the notes. Whether or not he could make a tender conditioned upon the surrender up to him of the notes it is not necessary for us to determine here, for, assuming that he could do so, appellant would not be obliged to produce the notes until such tender had actually been made. All that appellee did amounted to nothing more than an offer to make a tender, or a statement that he would make a tender if appellant would produce the notes, which, of course, is a very different thing from an actual tender conditioned upon production of the notes. There being no tender of any kind made prior to the filing of the suit, it is apparent that appellee cannot take advantage of appellant's inability to produce the notes before the suit was actually filed.

Appellee urges that appellant, at all times prior to the production of the notes at the Valley Bank on April 4, 1919, waived tender by its acts and conduct in referring appellee to its attorneys, and in not producing or offering to produce the notes on April 1st, and by the inability of its attorneys to produce them on April 2d. Such acts and conduct on the part of appellant and its attorneys, even if sufficient to constitute waiver, cannot be availed of by appellee in this case, for the reason that "a waiver is not operative if the other party has not the ability to produce the money presently." See 26 R. C. L. 624, par. 3; *Dorsey* v. *Barbee,* Litt. Sel. Cas. (Ky.) 204, 12 Am. Dec. 296; *Sargent* v. *Graham,* 5 N. H. 440, 22 Am. Dec. 469. The record in this case shows conclusively that appellee did not at any time during his negotiations with appellant and its attorneys concerning the

payment of the notes, prior to the filing of the suit, have the ability presently to produce the necessary money. He was depending upon the sale of the cotton to procure it, and it was not forthcoming until after the suit was filed.

The judgment is reversed and the cause remanded, with directions to enter judgment for appellant as prayed for in its complaint, including a reasonable attorney fee to be fixed by the judge of the court.

ROSS, C. J., and BAKER, J., concur.

NOTE.—Judge McALISTER, being disqualified to sit in the above-entitled cause, took no part in its decision, and Judge JOSEPH S. JENCKES, of the superior court of Maricopa county, was called to sit in the case in his stead.