Bernard PACHTER, Petitioner,

v.

L. L. WOODMAN, Sr., et al.,
Respondents.

No. B–6013.

Supreme Court of Texas.

Feb. 16, 1977.

Geary, Stahl, Koons, Rohde & Spencer, Gerald P. Urbach, Mark C. Clements and Steven F. Bright, Dallas, Jack Ware, Uvalde, for petitioner.

Jackson, Walker, Winstead, Cantwell & Miller, M. Douglas Adkins, Charles F. Schwab, Jr., Dallas, Ralph J. Graham, Corpus Christi, for respondents.

SAM D. JOHNSON, Justice.

This is a suit brought by the legal owner of a tract of land, Bernard Pachter, to set aside a sale of that land made under the power in a deed of trust. The defendants were L. L. Woodman, Sr. and L. L. Woodman, Jr. as the holders of the deed of trust who foreclosed, Gary Roberts as the substitute trustee, and D. Harold Byrd and Warren Wagner, Inc. as the purchasers at a foreclosure sale. Claiming an interest in the land, Plus Two Cattle Company, Inc. and the National Bank of Commerce of Dallas intervened. D. Harold Byrd and Warren Wagner, Inc. moved for a summary judgment and the trial court granted the motion. The court of civil appeals affirmed. 534 S.W.2d 940. We reverse and remand to the trial court.

The following summary of events is derived from the pleadings, the motions, the affidavits, and the sworn or certified copies of papers and documents filed in this case. The property in issue consists of approximately 1,017 acres of land located in Zavala County, Texas. In 1963 the Franklin Life Insurance Company conveyed this property to the Woodmans and the Woodmans executed a first lien deed of trust note in the sum of $100,000. In 1966 the Woodmans conveyed this tract to Byrd Farms, Inc. Byrd Farms executed a second lien deed of trust and note in the sum of $290,000. This conveyance was made subject to the lien held by Franklin Life Insurance Company. Subsequently, in 1968, L. L. Woodman, Jr.

purportedly assigned and transferred to L. L. Woodman, Sr. all of his interest in the note executed by Byrd Farms. In 1970 Byrd Farms conveyed the tract to D. Harold Byrd.

On March 4, 1971 D. Harold Byrd conveyed the tract to Pachter for a total consideration of $435,000, which included $5,500 for an irrigation motor located on the land. A $50,000 down payment was made. This conveyance, by warranty deed, was made subject to the first deed of trust lien held by Franklin Life Insurance Company with an outstanding balance of $65,-000, the second deed of trust lien held by Woodman, Sr. with an outstanding balance of $235,495.74, and a third deed of trust lien executed on March 4, 1971 by Pachter to Byrd in the sum of $73,699.86.[1]

In December 1972 Pachter conveyed the equitable title to the tract to Charles F. Schwab by means of a contract of sale, which was subsequently assigned to Plus Two Cattle Company, Inc. on or about January 1, 1973. Plus Two Cattle Company, Inc. pledged its rights in the contract of sale to the National Bank of Commerce of Dallas in June 1974.

The deed conveying the property from Byrd to Pachter was properly recorded. However, the tax roll of the Uvalde Consolidated Independent School District continued to show D. H. Byrd as owner. In February 1973 the tax assessor for the School District reported to Franklin Life Insurance Company that the 1972 school taxes on the tract were delinquent. Almost one year later, on February 7, 1974, Franklin Life Insurance Company wrote the following letter to the tax assessor:

"On February 26, 1973, you reported the 1972 School Taxes delinquent on the property described in the enclosed legal description. Since that time, we have written to the owner several times requesting evidence that these taxes have since been paid. However, we have not yet received proof of payment.

"We would appreciate your advising us if these taxes have been paid. . . . We would also appreciate your advising us if the 1973 School Taxes have been paid."

The tax assessor replied as follows:

"This land is still on our roll under the name of D. H. Byrd. There has been no deed change. The following are the taxes due:

" . . . .

"$4,634.71."

The amount reported by the tax assessor included accrued penalties and interest. In his affidavit Schwab asserts that the copy Plus Two Cattle Company, Inc. received of the above reply by the tax assessor was the first notice it had of delinquent taxes.

L. L. Woodman, Sr. elected to exercise his option to accelerate the note because of the failure to comply with the deed of trust provision requiring the payment of the taxes before the accrual of penalties and interest. He instructed his attorney to prepare a letter to be sent to Pachter's attorney, Plus Two Cattle Company, Inc., and Schwab notifying them of his acceleration of the total amount due because of the failure to pay taxes. The letter prepared by Woodman, Sr.'s attorney and dated February 25, 1974 stated:

" . . . L. L. Woodman, Sr., has elected to exercise his option to accelerate all remaining payments due and owing on and under such note and that accordingly all sums due and owing on and under such note are immediately due and payable to him. . . ."

This letter was postmarked February 27, 1974.

Plus Two Cattle Company, Inc. sent a check dated February 27, 1974 to the tax assessor in the amount which the tax assessor had indicated was due, $4,634.71. According to the affidavit of a deputy tax assessor-collector, Fleacie Coleman, this

1. Although it is alleged that the total consideration was $435,000, the amounts listed only total $429,695.60. The difference may represent interest on the notes which accrued prior to March 4, 1971 and which was paid by Pachter.

check was received by the tax assessor on March 1, 1974. Jack L. Fox, the attorney for Pachter, recites in his affidavit that the letter from Woodman, Sr. to him was received on March 4 or 5, 1974. By letter dated March 4, 1974, the tax assessor advised Franklin Life Insurance Company and Schwab of an error in the tax statement in the February letter; the amount was deficient by $679.44. A check for this sum was received from Plus Two Cattle Company, Inc. by the tax assessor by March 22, 1974.

Following communication between Pachter's attorney and Woodman, Sr.'s attorney, a letter dated March 29, 1974 was sent by Woodman, Sr.'s attorney to Pachter's attorney which provided that Woodman, Sr. would delay foreclosure for thirty days. The delay was granted in order to give Pachter an opportunity to conclude a sale of the land and to use the proceeds to pay Woodman, Sr. Negotiations between the two attorneys continued after the expiration of thirty days and included discussions of an increase in the interest rate on the note from six percent to nine percent. Pachter's amended original petition, which was verified, alleged Woodman, Sr.'s attorney represented to Pachter's attorney during several of these discussions that he would "personally notify [Pachter's] Attorney if and when the Defendants posted notices of said trustee's sale; [and] that [Woodman, Sr.'s] Attorney totally failed to comply with this agreement all to the detriment and damage of [Pachter]."

Eventually, on November 5, 1974, the land was sold at foreclosure sale for $198,-222. The date of this sale was over eight months after the letter relative to the election to accelerate was posted by the attorney for Woodman, Sr. The purchasers at the foreclosure were Warren Wagner, Inc. and D. Harold Byrd, the same individual whose name had been and continued to be listed as the owner of the property by the School District and the same individual to whom the tax notices were mailed by the School District. According to the assertion in plaintiff's verified petition, the tax no-tices were neither received by nor forwarded to Pachter.

With respect to the foreclosure sale, the affidavit by Gary Roberts as substitute trustee recites that "prior to twenty-one days before November 5, 1974, to-wit, October 14, 1974, I posted notices of the sale of such property . . . [at] the Zavala County Courthouse, the City Hall of Crystal City, Texas, and the Fire Station-Police Station of Crystal City, Texas, . . ." An affidavit by an attorney who does not appear to be involved in this litigation, William E. Casey, states he posted notices on October 14, 1974 and that "[a]t that time there were no Trustee's Notices" at the named locations of a sale of the land involved in this case.

The following provisions of the deed of trust are pertinent:

"5. GRANTOR COVENANTS AND AGREES AS FOLLOWS:

". . . .

"(d) TAXES: Grantor will pay all taxes and assessments that are or may become due and payable on the above described property . . . before any interest or penalty accrues thereon.

". . . .

"6. Should GRANTOR fail or refuse to . . . perform any of the . . . covenants . . . HOLDER shall be entitled, without being under legal obligation to do so, to exercise the option of:

". . . .

"(b) Declaring the whole of the note . . . immediately due and payable, with or without notice to GRANTOR and without presenting for payment any matured part of the indebtedness secured by this DEED OF TRUST, and cause trustee sale to be made.

". . . .

"7. . . . *It is agreed that* the recitals in the conveyance to the purchaser, or purchasers, shall be full and conclusive evidence of the truth of the matters therein stated, and *all prerequisites to said sale shall be presumed to have been*

*performed,* and such sale and conveyance shall be conclusive against GRANTOR, his heirs and assigns." [Emphasis added.]

The issue before this court is whether it was proper to render a summary judgment in favor of D. Harold Byrd and Warren Wagner, Inc., the purchasers of the land at the foreclosure sale.

The standard to be applied to this issue was set forth in *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965), as follows:

> "Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. [Citations omitted.] In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. [Citations omitted.] If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. [Citations omitted.] Evidence which favors the movant's position is not considered unless it is uncontradicted. If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony."

■ Pachter argues that there is a question of fact with respect to the posting of the notice of the foreclosure sale. The affidavit by Roberts, the substitute trustee, declares:

> ". . . *prior to* twenty-one days before November 5, 1974, to-wit, *October 14, 1974,* I posted notices of the sale of such property . . . [at] the Zavala County Courthouse, the City Hall of Crystal City, Texas, and the Fire Station-Police Station of Crystal City, Texas, . . . ." [Emphasis added.]

This statement could be read as stating that he posted notice prior to October 14, 1974. The affidavit by attorney William E. Casey asserts that there was no notice of sale of this property posted on October 14, 1974 at the named locations. Under the reasoning of *Hart v. Eason,* 159 Tex. 375, 321 S.W.2d 574 (1959), the affidavit by Casey would rebut the presumption contained in the deed of trust that "all prerequisites to said sale shall be presumed to have been performed." Accordingly, a question of fact is presented as to whether notice of the foreclosure sale was properly given.

■ Pachter further alleges that Woodman, Sr.'s attorney promised to give him notice of any foreclosure sale and that no such notice was given. In this summary judgment proceeding D. Harold Byrd and Warren Wagner, Inc., the moving parties, had the burden of showing such notice was either given or was not required. The presumption contained in the deed of trust that "all prerequisites to said sale shall be presumed to have been performed" met this burden. *Gulf, Colorado & Santa Fe Railway Co. v. McBride,* 159 Tex. 442, 322 S.W.2d 492 (1959). This presumption means either (1) notice of the decision to foreclose was given, or (2) such notice was not a prerequisite. The allegation in the verified petition of Pachter that no notice was given rebuts the presumption notice was given. The statement by Fox in his affidavit that Woodman, Sr.'s attorney promised to give such notice and the allegation in Pachter's verified petition that notice was not given and that he was thereby damaged would tend to rebut the presumption that the notice promised by Woodman, Sr.'s attorney was not a prerequisite to the foreclosure sale. Therefore, there is a question of fact as to this material issue.

Inasmuch as the pleadings, the motions, the affidavits, and the sworn or certified

copies of papers and documents demonstrate the existence of fact issues regarding the adequacy of the notice for the foreclosure sale, it is not necessary to consider the possibility of other fact issues. On remand, the trial court may consider all of the arguments advanced by Pachter to set aside the foreclosure sale.

As there exist material questions of fact, the rendering of the summary judgment was improper. The judgment is reversed and the cause is remanded for trial.

YARBROUGH, J., concurs in the result.