705 P.2d 1343

**Ray E. CAGLE, Plaintiff-Appellant,**

v.

**Mary E. Cagle CARLSON, dealing with her sole and separate property; Paul W. Mercer and Florence L. Mercer, individually and as husband and wife; Gertrude Doyel, widow, Defendants-Appellees.**

**No. 1 CA–CIV 6781.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 29, 1985.

Reconsideration Denied March 21, 1985.

Review Denied Sept. 4, 1985.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Herbert Mallamo, Phoenix, for plaintiff-appellant.

John P. Moore, Phoenix, for defendant-appellee, Cagle/Carlson.

Stephen D. Chaya, Phoenix, for defendants-appellees, Mercer and Doyel.

## OPINION

GREER, Judge.

This is an appeal from a suit to set aside a sheriff's sale ordered as a result of foreclosure proceedings upon the appellant Cagle's default on a promissory note.

In August 1972, the appellant gave a note of $50,000 to his wife Mary Cagle (appellee Cagle Carlson). She thereafter assigned $15,000 of the note to her attorney Paul Mercer. Cagle subsequently defaulted on the note, and both Mercer and Cagle Carlson then brought foreclosure actions in March 1973 against the properties secured by the note. Mary Cagle was granted summary judgment in her suit and Ray Cagle was granted summary judgment in the Mercer action. Mary Cagle then proceeded to execute on the judgment in her suit, and Mercer, using a credit bid of $20,000, purchased the real property on Mary's behalf. In January, 1975, the appellant brought the present action to set aside the December, 1974 sale.

On November 10, 1975, the trial court granted a motion to dismiss filed by the defendants (appellees in the present suit). Appeal was taken, and this court issued a memorandum decision in January 1980. *Cagle v. Cagle*, 1 CA–CIV 4135 Memorandum Decision (Ariz.App. Jan. 15, 1980). We held that the motion to dismiss should be reversed, since the trial court had improperly refused to deal with the issues raised. Specifically, we found that the trial court erred in ruling that the issues raised in the original complaint had been previously tried in another suit.

The matter was remanded and on July 29, 1980, the defendants filed a new motion for summary judgment on the issues of unclean hands, waiver, and tender. This motion was denied October 1, 1980. On October 2, the defendants filed a motion for dismissal claiming the plaintiffs had failed to join an indispensable party. This motion was also denied.

An amended complaint was filed on August 6, 1981, adding the claimed indispensable party, and offering to pay to the defendants the amount of the underlying judgment. On December 9, 1981, defendant Mary Cagle Carlson filed a motion for summary judgment, and on December 14, defendants Mercer and Doyel (the claimed indispensable party) did the same. In January, 1982, the court sought additional memoranda on the issue of tender. Judgments were subsequently entered for the defendants on April 26, 1982, from which the present appeal is taken.

The primary issue raised by the appellant is that the trial court was precluded from finding there were no material issues of fact in the case by virtue of this court's memorandum decision. They argue that under a "law of the case" or "res judicata" theory, the memorandum decision was a mandate requiring the case to be heard on the merits. We disagree.

In the case of *In Re Monaghan's Estate*, 71 Ariz. 334, 227 P.2d 227 (1951), our supreme court addressed the effect a prior appellate decision has on subsequent determinations in the same case. The court found two exceptions to the "law of the case" rule, stating, "[W]here the court expressly reserves its decision on any point raised in the first appeal it is not conclusive as to those matters reserved.... Nor is it conclusive on points where the first decision is ambiguous and conflicting." 71 Ariz. at 336, 227 P.2d 227 (citations omitted). In the present case, although our first decision stated, "[I]t appears that Mr. Cagle may have stated a cause of action." Slip op. at 5, we expressly reserved determination on the substantive issues, stating, "We wish to make it abundantly clear that our decision is not an adjudication of the merits of this case. Rather, this case is remanded for the litigants and court to deal with the notice, conscionability and other matters claimed as error relating to the

sheriff sale." [1]  Slip op. at 5–6.  In our opinion, the issues subsequently addressed by the trial court (and now this court) were not precluded by our previous memorandum decision.

Cases cited by appellant are distinguishable from the case at bar.  In *Tucson Gas and Electric Co. v. Superior Court,* 9 Ariz.App. 210, 450 P.2d 722 (1969), for example, division two of this court dealt with specific errors that arose at trial, and found its earlier decision to implicitly require a "retrial."  Appellant also cites *Hurst v. Hurst,* 1 Ariz.App. 603, 405 P.2d 913 (1965).  That decision, however, deals with waiver by failure to object at trial, and we do not find the case in point.

We hold, therefore, that the issues before the trial court had not been previously determined when it entered summary judgment for the defendants.

Turning to the merits of the case, the appellees argue that the grant of summary judgment was appropriate, and cite several grounds to support the judgment.  They assert that the entry is proper since tender of the amount of judgment was not made.  Since we find the tender issue dispositive, we will not discuss other contentions made by appellees.

The appellee argues that summary judgment was properly granted since the plaintiff did not tender the amount of judgment prior to moving to set aside the sheriff's sale.  In *Young Mines Co. v. Sevringhaus,* 38 Ariz. 160, 298 P. 628 (1931), our supreme court held:

> This is an equitable proceeding for the foreclosure of a mortgage, and in passing on the motion the general rules of equity should apply.  Prominent among these rules is the familiar one that he who seeks equity must do equity.  It is not disputed that defendant is both legally and morally indebted to plaintiff for the amount of the judgment for which the property was sold.  It is but equitable and the rule sustained by the

weight of authority that, as a condition precedent to the setting aside of the sale, defendant should tender to plaintiff the amount of the judgment with costs and interest.

38 Ariz. at 166, 167, 298 P. 628 (citations omitted).  Accord, *Bracken v. Kyle, Inc.,* 589 S.W.2d 501 (Tex.Civ.App.1979); *Pachter v. Woodman,* 534 S.W.2d 940 (Tex. Civ.App.1976), rev'd on other grounds, 547 S.W.2d 954 (1977).

Appellants' responses to the tender issue are that principles of res judicata, or more properly, claim preclusion, bar this issue; that an offer to make payment suffices as a tender; and that in any event payment of the judgment was made in full.

■ We first address appellants' contention that prior denial of a motion for summary judgment constitutes res judicata when a new motion for summary judgment is made, based on the same grounds.  In *Mozes v. Daru,* 4 Ariz.App. 385, 420 P.2d 957 (1966), division two of this court discussed the practice of renewing a motion for summary judgment after such a motion had been denied.  The court characterized such a practice as an abuse of the system, and stated that repeated motions for summary judgment would not be allowed.  The court also noted, however, that no purpose would be served by forcing a case to trial where no genuine issue of fact exists.  Further, the court stated, "Hence, there is no iron clad rule that a denial of such a motion is res judicata and absolutely precludes renewal or the making of a subsequent motion for the same relief."  4 Ariz. App. at 389, 420 P.2d 957.  Here, further discovery was undertaken between the time of the denial of the July, 1980 motion for summary judgment and the December 1981 filing of the new motion.  Therefore, even though successive motions were filed, we find no abuse of the system in the present case.

Hence, those issues are deemed abandoned. *Valley Vendors Corp. v. City of Phoenix,* 126 Ariz. 491, 616 P.2d 951 (App.1980).

---

**1.** Appellant mentions the conscionability and irregularities of sale issues at various points in his brief.  The brief, however, does not contain argument or citation in support of either claim.

We also note that "tender" involves more than merely an offer to pay the amount of the judgment. The appellant argues, relying upon our decision in *Nelson v. Cannon*, 126 Ariz. 381, 616 P.2d 56 (App.1980), that his statement in the 1981 amended complaint offering to pay "any and all sums which may be, or found by the Court to be due and payable under or upon said promissory note and mortgage securing same" is sufficient to overcome the lack of tender at the time of the original complaint. Beyond the fact that the offer came over six years after institution of the action, we find that the statement does not constitute "tender" of the amount of judgment.

In *Nelson*, we noted that, as a condition precedent to entitlement to the remedy of specific performance, a buyer must show that he "stood ready, willing and able to perform." 126 Ariz. at 385, 616 P.2d 56. That case, however, dealing with specific performance, does not render any less valid the decision in *Young Mines Co. v. Sevringhaus*. Furthermore, our supreme court, in an early decision, found "tender" to be more than merely the offer to pay. In *Somerton State Bank v. Maxey*, 22 Ariz. 365, 197 P. 892 (1921), the court held:

> [Tender] imports, not merely the readiness and the ability to pay or perform at the time and place mentioned in the contract, but also the actual production of the thing to be paid and delivered over, and an offer of it to the person to whom the tender is to be made; and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.

22 Ariz. at 369, 197 P. 892 (citations omitted). Accord, *Bembridge v. Miller*, 235 Or. 396, 385 P.2d 172 (1963). In the present case, we hold that appellant's offer in the amended complaint to pay the amount of judgment did not satisfy the requirement of "tender" to the appellees as a condition precedent to setting aside the sale.

Finally, regarding appellant's argument that he has already "tendered" sufficient amounts over to the appellees, we find that the amounts claimed were paid on other obligations owed by appellant, and are not "tender" or payment in the present suit.

Appellants next contend that they received no personal notice of the sheriff's foreclosure sale; that statutory notice by publication, posting and recording after the sale does not provide due process notice. We disagree.

Although a review of the record discloses that the issue has not been clearly addressed throughout the proceedings, it is apparent that both sides concede compliance with statutory requirements. Appellants, however, assert that due process considerations require notification beyond that imposed by statute.

The requirements of notice pursuant to a sheriff's sale are set forth in A.R.S. § 12–1621. That statute states, in part:

> For the sale of real property, notice shall be given by posting notices for not less than fifteen days successively before the day of sale and three public places in the county, one of which shall be at or near the courthouse door, and publishing a copy thereof in a newspaper for three weeks before the day of sale.

A.R.S. § 12–1621(A)(3). In addition, A.R.S. § 12–1626 states:

> B. ... In all other cases [not involving certain specified leaseholds], including sales under order of court in foreclosure suits, the property is subject to redemption.
>
> C. The officer shall give to the purchaser a certificate of sale, setting forth a full description of the real property sold, the price bid and paid for each parcel if sold in lots or parcels and whether subject to redemption or not.
>
> D. A duplicate of the certificate shall be recorded by the officer in the office of the county recorder.

As early as 1924, the United States Supreme Court held that a post-judgment debtor was not required to receive personal notice in a subsequent execution proceeding. In *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), a case dealing with

post-judgment garnishment, the Court held:

"[I]n the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take 'notice of what will follow,' no further notice being 'necessary to advance justice.'"

266 U.S. at 288, 45 S.Ct. at 62 (citations omitted).

Admittedly, this decision has since come under attack. In *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946), the Court held that a husband against whom a judgment for support arrearages was sought to be enforced required notice so as to not cut off the husband's defenses to the arrearages proceedings. Notably, however, the *Griffin* holding concerned an enforcement proceeding based upon a judgment obtained in an *ex parte* proceeding. The Court distinguished between enforcement of such a judgment and enforcement of a judgment rendered upon notice and an opportunity for hearing. *See Griffin,* 327 U.S. at 233, 66 S.Ct. at 562. In that sense, the *Griffin* and *Endicott-Johnson* decisions do not conflict.

More importantly, in the 1950's, the entire due process analysis began to evolve toward a more flexible analysis. In *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), a case involving a judicial proceeding for approval of an account submitted by the trustee of a common trust, the Supreme Court held that due process required individual notice to beneficiaries whose names and addresses were known to the trustee. *Mullane* and its progeny, e.g., *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), have come to stand for the broad proposition that when an adjudicatory proceeding is initiated in which the complaining party might directly and adversely have a legally protected interest effected, he is entitled to a hearing. This doctrine has gained wide acceptance in the courts of a variety of states, including Arizona. *See,* e.g., *Laz v. Southwestern Land Co.,* 97 Ariz. 69, 397 P.2d 52 (1964); *Mason v. Wilson,* 116 Ariz. 255, 568 P.2d 1153 (App.1977), *Brandt v. City of Yuma,* 124 Ariz. 29, 601 P.2d 1065 (App.1979).

Further, the United States Supreme Court, in 1969, issued the first in a line of decisions affording additional due process rights to pre-judgment debtors. *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

Against this backdrop, the more recent cases dealing with the due process rights of post-judgment debtors have produced mixed decisions. In *Chonowski v. Bonucci,* 47 Ill.2d 519, 267 N.E.2d 671 (1971), the Illinois Supreme Court, in deciding a claim brought by a judgment creditor to set aside an execution sale because of a lack of due process, held that actual notice was not necessary. The court stated:

Assuming that the appellants lacked proper notice in advance of the sale, however, we are unable to see in what manner this prejudiced their rights. It must be stressed at the outset that the only rights of the appellants in question here are their rights as judgment creditors to redeem the property. As judgment creditors they enjoyed no privilege to purchase the property at the execution sale beyond that of any other potential purchaser. As far as [their] rights as judgment creditors are concerned, the sale did not involve an adjudication of them, nor did it extinguish them.

267 N.E.2d at 675. In *Langford v. Tennessee,* 356 F.Supp. 1163 (W.D.Tenn.1973), the court relied upon *Endicott-Johnson,* ruling that a judgment debtor upon whose automobile had been levied was not entitled to personal notice of the execution proceeding. To the contrary, the Pennsylvania

Supreme Court in *Luskey v. Steffron,* 461 Pa. 305, 336 A.2d 298 (1975), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977) specifically held that the owner of real estate subject to a sheriff's sale was required to receive personal notice of the sale.

In decisions dealing with post-judgment garnishment, the results likewise vary. In *Jahn v. Regan,* 584 F.Supp. 399 (E.D.Mich. 1984), and *Brown v. Liberty Loan Corp.,* 539 F.2d 1355 (5th Cir.1976), *cert. denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977), federal courts found that state post-judgment garnishment proceedings did not require personal notice to the debtors. Other federal courts, however, have found similar statutes unconstitutional because they did not afford personal notice to the debtor. *Dionne v. Bouley,* 583 F.Supp. 307 (R.I.1984); *Betts v. Tom,* 431 F.Supp. 1369 (D.Hawaii 1977).

In Arizona, the rule of *Endicott-Johnson* enjoys continued vitality. In *Knight v. De-Marcus,* 102 Ariz. 105, 425 P.2d 837 (1967), *cert. denied* 390 U.S. 736, 88 S.Ct. 1437, 20 L.Ed.2d 270 (1968), for example, our supreme court held that a debtor was not entitled to actual notice when an appointed master sought to execute on real property to satisfy an award of compensation. The case was based upon Rule 53(a) of the Rules of Civil Procedure, and did not discuss the constitutional implications involved. Notably, the United States Supreme Court denied certiorari in the case despite a dissent by Justice Douglas, and joined by two others, in which a stinging criticism of the *Endicott-Johnson* doctrine was set forth.

More recently, in *Huggins v. Deinhard,* 134 Ariz. 98, 654 P.2d 32 (1982), this court held that a husband against whom a judgment had been taken for child support was not entitled to actual notice before a writ of garnishment was issued. The opinion briefly noted the developments in the due process analysis after *Endicott-Johnson,* but found nevertheless that appellant had had an adequate opportunity to be heard. We stated, "We know of no authority holding that, after judgment, due process of law requires that additional opportunities

for notice and hearing must be offered the judgment debtor, such as appellant, before a writ of garnishment may be issued." 134 Ariz. at 103, 654 P.2d 32.

We find that the *Endicott-Johnson* rationale remains fundamentally sound. In the present case, the appellant concedes that statutory notice procedures were complied with. Furthermore, the appellant received personal notice of the original foreclosure proceeding, was represented by counsel and appeared therein several times. The entry of judgment placed the appellant and certainly his counsel upon notice that execution could follow. Also, notice by recording was made subsequent to the sheriff's sale, and the appellant still had the statutory redemption period under which to assert his rights.

It should be noted also that the situation at present is distinguishable from post-judgment *garnishment* cases in that exemption defenses are an important right in garnishment proceedings; whereas in a foreclosure case, the possibility of execution upon the property is established at the original proceeding.

We also find the post-*Mullane* Arizona decisions distinguishable from the case at bar. In *Laz v. Southwestern Land Co.,* 97 Ariz. 69, 397 P.2d 52 (1964), the appellant never received actual notice of any proceeding until after the redemption period. In *Mason v. Wilson,* 116 Ariz. 255, 568 P.2d 1153 (App.1977), the appellants were not a party to the underlying foreclosure and therefore had no notice whatsoever of the judgment. Finally, in *Brandt v. City of Yuma,* 124 Ariz. 29, 601 P.2d 1065 (App. 1979), the City's challenge was not to an execution sale, but to an application for a treasurer's deed, which occurred *subsequent* to the redemption period.

We find that the appellant was not denied due process by his lack of actual personal notice to the execution on the property.

█ Finally, the appellant argues that the grant of summary judgment denied him his right to trial by jury under the United

States and Arizona Constitutions. We find this claim to be without merit. In *Morrell v. St. Luke's Medical Center,* 27 Ariz.App. 486, 556 P.2d 334 (1976), we addressed this precise question and held:

> Finally, appellant argues that the entry of summary judgment precludes his right to a jury trial and to cross-examine witnesses. No authority is presented by the appellant, however, to in effect hold that Rule 56, Rules of Civil Procedure, 16 A.R.S., is unconstitutional.

> It is obvious that the entry of summary judgment will preclude a later trial by jury. This is the design of Rule 56—to resolve whether material issues of fact exist, and if none do, then to enter judgment for the moving party if he is entitled to it as a matter of law.

27 Ariz.App. at 490, 556 P.2d 334 (citations omitted). In short, the granting of summary judgment does not deprive a plaintiff of his constitutional rights to a jury trial because, in such cases, there are simply no genuine issues of fact for a jury to consider.

In conclusion, we find no due process violation in the notice afforded appellant, and hold furthermore, that appellant's failure to tender to the appellees the amount of judgment precluded the appellants' setting aside of the sale. Thus, the trial court correctly entered summary judgment for the appellees.

Accordingly, the judgment is affirmed.

FROEB, J., concurs.

KLEINSCHMIDT, Judge, special concurrence:

I concur that notice of execution on the judgment was unnecessary because I think *Knight v. DeMarcus,* 102 Ariz. 105, 425 P.2d 837 (1967) controls. The issue deserves re-examination. Debtors will not always be aware that their property has been executed upon and will thereby lose the right of redemption. *See Luskey v. Steffron, Inc.,* 461 Pa. 305, 336 A.2d 298 (1975) *cert. denied,* 430 U.S. 968, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977) for a case at odds with *Knight.* I think the rule adopted in *Luskey* ensures a fairer result and

places little added burden on the judgment creditor.