NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SIERRA VERDE RANCH PROPERTY OWNERS ASSOCIATION,
*Plaintiff/Appellee*,

*v.*

SCOTT B. MCLAREN, *Defendant/Appellant*.

No. 1 CA-CV 25-0384

FILED 12-18-2025

Appeal from the Superior Court in Yavapai County
No. S1300CV202400347
The Honorable Kristyne Marie Schaaf-Olson, Judge *Pro Tempore (Retired)*

**AFFIRMED**

COUNSEL

Scott B. McLaren, Seligman
*Defendant/Appellant*

Goodman Law Group, LLP, Mesa
By Danny M. Ford
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

¶1        Defendant Scott McLaren appeals from the entry of summary judgment for plaintiff Sierra Verde Ranch Property Owners Association (POA). Because McLaren has shown no error, the judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        In April 2020, McLaren purchased land in Seligman, Arizona. The warranty deed transferring the property to McLaren described the land as "Tract 174, SIERRA VERDE RANCH UNIT III." That warranty deed stated McLaren took the property "**SUBJECT TO** . . . covenants, conditions, restrictions, obligations and liabilities as may appear of record." As a result, McLaren took the property subject to the March 1996 Declaration of Covenants, Conditions, and Restrictions (CC&Rs) for Sierra Verde Ranch Units I and II, with Unit III (including McLaren's parcel) annexed in August 1996.

¶3        The CC&Rs, recorded with the Yavapai County Recorder established the POA. The POA, also defined as the "Association," is an Arizona non-profit corporation established in March 1996. The CC&Rs expressly state that every parcel owner, "in accepting a deed or contract for any Parcel, whether or not it shall be so expressed in such deed or contract, automatically becomes a member of the Association, and agrees to be bound by such reasonable rules and regulations as may . . . be established by the Association." When McLaren bought the land, he received additional documents noting his obligations, including paying fees.

¶4        The purpose of the POA stated in the CC&Rs is to maintain and improve common areas "all in accordance with the provisions of the" CC&Rs. To do so, the CC&Rs direct the POA to "provide necessary and appropriate action," including giving the POA the right to enter on a parcel "if reasonably necessary." The POA has "the powers necessary to carry out its purposes," including "to create reserves."

2

¶5            The CC&Rs also grant the POA the power to levy assessments against each parcel owner. As applicable here, the CC&Rs expressly state that each parcel owner (including McLaren) "is obligated to pay . . . regular assessments for normal maintenance and repair and reserves, along with Association insurance and operating costs." The POA has to set these annual assessments each year in December, provide notice to the parcel owners and set a payment due date. The CC&Rs further provide that unpaid assessments are a lien on the applicable parcel, stating that the annual assessments plus "late payment penalties and charges, if any, together with interest, (all as set by the Association) costs and reasonable attorneys fees, shall be a lien on the Parcel." The CC&Rs provide that an assessment lien generally has priority over other liens, with some exceptions not applicable here. The CC&Rs expressly authorize the POA to sue a parcel owner both "for a money judgment for unpaid assessments and charges" and to foreclose on such a lien "in a like manner as a foreclosure of a real property deed of trust or mortgage."

¶6            After McLaren bought his property, the POA imposed annual assessments on January 1 of each year. For two years, McClaren paid these annual assessments, albeit paying them late. In 2021, he paid $205.40 (including $80 in late fees and collection costs), and in 2022, he paid $140.40 (including $15 in late fees). In 2023, however, McClaren refused to pay the $150.48 annual assessment. And in 2024, McClaren refused to pay the $180.50 annual assessment. Those refusals led to this litigation.

¶7            In April 2024, relying on the authority granted to it in the CC&Rs, the POA sued McLaren (1) claiming breach of contract to recover the assessments plus interest, costs, fees and other charges and (2) seeking to foreclose on the lien created by the unpaid assessments. After McLaren answered and the parties conducted some discovery, the POA moved for summary judgment, claiming that McLaren owed $652.98. McClaren opposed the motion, submitting significant documentation and twice moving to submit additional evidence.

¶8            In January 2025, after oral argument, the superior court granted the POA summary judgment on its breach of contract claim, concluding McLaren failed to pay the assessments and related interest, costs, fees and other charges. Because the POA had not shown McLaren owed at least $1,200 or that his assessments were delinquent for more than

a year, the court denied summary judgment on the foreclosure claim. *See* Ariz. Rev. Stat. (A.R.S.) § 33-1256(A) & -1807(A) (2025).[1]

**¶9**        Both McLaren and the POA moved for reconsideration. After further briefing, in April 2025, the superior court granted the POA's motion (concluding McLaren owed unpaid assessments delinquent for more than a year) and denied McLaren's motion.

**¶10**        In July 2025, the court entered a judgment (1) foreclosing on the POA's lien and (2) awarding the POA $848.48 in unpaid assessments and related fees; $1,022.14 in collection costs; and $12,545 in attorneys' fees. This court has jurisdiction over McLaren's timely appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶11**        This court reviews a grant of summary judgment de novo, viewing the evidence in the light most favorable to McLaren, *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003) (citing cases), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007). This court will affirm the entry of summary judgment if it is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995) (citing cases). The question, then, is whether the POA showed "that there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

**¶12**        McLaren lists numerous issues that he asserts show summary judgment was improper. McLaren's primary argument is that there are disputed material facts about his "mutual assent necessary for contract formation" and the POA's "prior material breach of the CC&Rs by failing to maintain essential common area roads and water wells." McLaren further argues error in granting summary judgment because: (1) the POA failed to address or disprove his affirmative defenses; (2) he had a right to a jury trial; (3) the court was required to grant his motion to submit additional evidence; (4) the court "misapplied or misrepresented" case law the POA cited; (5) the court was required to grant his motions for reconsideration and relief from judgment; and (6) the court "fail[ed] to consider the full context of [McLaren's] litigation posture." These arguments are addressed in turn.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**¶13** McLaren claims he did not agree to the contract with the POA, or the CC&Rs, because he misunderstood the legal status of the POA. He argues the POA identified itself as an Association "and failed to disclose its corporate status." But McLaren's warranty deed expressly states that he took the property subject to recorded CC&Rs. And the CC&Rs, which were recorded before McLaren purchased his parcel, state that each owner, "in accepting a deed or contract for any Parcel, whether or not it shall be so expressed in such deed or contract, automatically becomes a member of the Association, and agrees to be bound by such reasonable rules and regulations . . . established by the Association." Moreover, McLaren has not shown how the legal status of the POA (be it an association or a corporation) would impact the validity of the CC&Rs or their applicability to him.

**¶14** As the POA notes, a deed that contains a covenant that runs with the land (like the CC&Rs here) is a contract between the POA and the parcel owners. *See ACEMA v. Turner*, 196 Ariz. 631, 634 ¶ 5 (App. 2000). And the obligations of the CC&Rs, including annual assessments imposed by the POA, can be enforced as a contract against parcel owners like McLaren. *See Powell v. Washburn*, 211 Ariz. 553, 556 ¶ 12 (2006). Upon purchasing his parcel, given the terms of his warranty deed and the recorded CC&Rs, McLaren became subject to the CC&Rs.

**¶15** McLaren argues that the POA first materially breached the CC&Rs by failing to maintain roads and closing a well, thereby excusing his obligation to pay annual assessments. The CC&Rs provide that they "may be enforced by," among others, the POA or a parcel owner. The POA, in filing this case, sought to enforce the CC&Rs against McLaren. McLaren, however, has not sued the POA to enforce the CC&Rs, nor did he counterclaim against the POA to enforce the CC&Rs. Moreover, he did not show a prior material breach of the CC&Rs that would allow him to suspend his obligation to pay the annual assessment. *See Zancanaro v. Cross*, 85 Ariz. 394, 399-400 (1959) ("Ordinarily the victim of a minor or partial breach must continue his own performance, while collecting damages for whatever loss the minor breach has caused him; the victim of a material or total breach is excused from further performance.").

**¶16** McLaren argues the POA did not "maintain both the primary access road [to his parcel] and the designated water well." McLaren does not, however, allege that he could not use his parcel. Nor has he shown any obligation in the CC&Rs for the POA to maintain a specific access road or well. McLaren does not challenge the validity or use of the annual assessment imposed, arguing instead that the POA should have done more. Requiring the POA to have done more, however, would have caused

additional expenses that the POA would have included in annual assessments. These actions do not provide an excuse for McLaren to fail to pay the annual assessments that led to this litigation.

**¶17**      In support of his argument that the POA first materially breached, McLaren argues the "independent covenant" doctrine is inapplicable here because the CC&Rs do not contain an "explicit, unconditional payment clause[]." But the obligation to pay assessments arises out of ownership of property subject to the CC&Rs, and does not depend on some "duty to perform" as McLaren suggests. Although in a different context applying different CC&Rs, this court noted more than 30 years ago that "the obligation to pay assessments arises from unit ownership and is not dependent upon completion of improvements." *Mountain View Condos. Homeowners Ass'n Inc. v. Scott*, 180 Ariz. 216, 217 (App. 1994). *Scott* reaffirmed a concept recognized earlier, where this court recognized the difference between the obligation to pay assessments to the association and the obligation of the association to undertake maintenance. *See Casita de Castilian, Inc. v. Kamrath*, 129 Ariz. 146, 148 (App. 1981) ("This [homeowner's association] provision placed a burden on the individual owners to pay such assessments as are properly levied. It does not obligate the council to do the maintenance. We cannot read into that provision an obligation which is not there.").

**¶18**      Here, McLaren took ownership of his parcel in a deed that made plain he was subject to the CC&Rs, with obligations that are "appurtenant and may not be separated from ownership of the [p]arcel." As an owner of the parcel, McLaren is obligated under the CC&Rs to pay assessments and, in failing to do so, subject to a lien (and foreclosure of that lien) on his parcel.

**¶19**      McLaren argues that, because the CC&R's here lack a provision requiring payment of assessments "even if services were not rendered," he is entitled to relief under *Rivers Edge Condo. Ass'n v. Rere, Inc.*, 568 A.2d 261 (Pa. Super. Ct. 1990). But *Rivers Edge*, a Pennsylvania case that is not binding here, found that an owner's withholding of assessments because of alleged non-performance of maintenance by the association was not supported by the language of the CC&Rs in that case, and also was not supported by statute or public policy. 568 A.2d at 263. *Rivers Edge* found the CC&Rs expressly required payment of assessments even when the association did not provide services, and that the law did not support allowing owners to withhold payment of assessments when services were not provided. *See id.* Here, although the CC&Rs are silent on the point, the

obligation to pay assessments is independent of the POA's responsibility to maintain common areas.

¶20        When faced with the POA's motion for summary judgment, McLaren had an obligation to show that there was a genuine dispute as to any material fact. *See* Ariz. R. Civ. P. 56(e). McLaren, however, failed to do so. Nor has McLaren shown that the annual assessments, which the CC&Rs require the POA to impose "on a uniform per acre . . . basis," allowed him to offset or dispute his payment obligation based on his arguments about road or well maintenance. McLaren also has not shown how his asserted affirmative defense negates the provision in the CC&Rs, that unpaid assessments "shall constitute a lien" on the parcel that can be foreclosed upon by the POA. On this record, McLaren has not shown that his allegation of a prior material breach precluded summary judgment.

¶21        McLaren next argues the POA failed to meet its burden for summary judgment by not providing evidence refuting McLaren's affirmative defenses. McLaren relies on *Nat'l Bank of Ariz. v. Thruston*, which held that the party moving for summary judgment has the initial burden to show the lack of a genuine issue of material fact. 218 Ariz. 112, 115 ¶ 14 (App. 2008). *Thruston*, however, concluded that the moving party "was not required to present the superior court with evidence negating the [defendant's] affirmative defenses." *Id.* at 119 ¶ 27. Instead, *Thruston* noted, "'[t]he proponent of an affirmative defense has the burden of . . . proving it.'" *Id.* (quoting *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 89 ¶ 21 (App. 2006)). Contrary to McLaren's contention, the POA was not required to "demonstrat[e] that [McLaren]'s pleaded affirmative defenses do not present a legally sufficient defense or a triable issue of fact."

¶22        McLaren argues the entry of summary judgment denied him his constitutional right to a jury trial. But "granting of summary judgment does not deprive a plaintiff of his constitutional rights to a jury trial because, in such cases, there are simply no genuine issues of fact for a jury to consider." *Cagle v. Carlson*, 146 Ariz. 292, 298 (App. 1985); *accord Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 599 (App. 1994); *Gurr v. Willcutt*, 146 Ariz. 575, 580-81 (App. 1985). Because the grant of summary judgment was proper, McLaren was not denied his right to a jury trial.

¶23        McLaren next argues the superior court erred in denying his motion for leave to submit additional evidence after the POA filed its reply in further support of the motion for summary judgment. McLaren concedes the court had discretion in addressing his motion, and that the court's denial of his motion is reviewed for an abuse of discretion. He has shown

no abuse of discretion here. Nor has McLaren shown that the superior court did not properly review the record presented. And to the extent McLaren argues the superior court failed to account for his answer, when faced with a motion for summary judgment, "an opposing party may not rely merely on allegations or denials of its own pleading," but, instead, "must" affirmatively and properly "set forth specific facts showing a genuine issue for trial." Ariz. R. Civ. P. 56(e).

¶24        McLaren claims the superior court misapplied the law, stating it "appears to have adopted [the POA]'s flawed legal arguments regarding the 'independent covenant' rule." As discussed above, the applicable minute entries focus on McLaren's admitted failure to pay as required by the CC&Rs. McLaren has shown no error in the application of the law. And because the superior court did not err in granting summary judgment for the POA, McLaren has shown no abuse of discretion in the court denying his motions for reconsideration and relief from judgment.

¶25        Finally, McLaren argues that the superior court "fail[ed] to consider the full context of [his] litigation posture." This argument is based, at least in part, on the premise that McLaren did not seek money damages from the POA because an award would "ultimately be paid by his own neighbors." But McLaren has not shown how those considerations would have, or should have, altered the superior court's ruling on the POA's motion for summary judgment. Stated simply, claims not asserted by a party are not a valid defense to a motion for summary judgment.

## CONCLUSION

¶26        The judgment is affirmed. The POA seeks its reasonable attorneys' fees and costs on appeal under Section 3(E) of the CC&Rs or under A.R.S. §§ 12-341 and -341.01. As the successful party, the POA is awarded its reasonable attorneys' fees and costs on appeal contingent on its compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR

8