PER CURIAM.
Jackson Hill Marina (“Marina”) filed suit against Fireman’s Fund Insurance Company (“Insurance Company”) to recover the face amount of a policy covering a portable metal building allegedly owned by Marina. Texas National Bank (“Bank”) intervened to collect a portion of the proceeds under the mortgage clause of the policy.
Marina purchased a Texas standard policy from State Insurance Agency, Inc. of San Augustine (“Agency”). The policy was issued to Marina as the insured, and Bank was named in the loss payable clause as mortgagee. The period of coverage ran from April 1, 1982, to April 1, 1983. On April 12, 1979, Marina, by L.N. Coker, president and sole stockholder, executed a note to Bank in the principal amount of $45,-000.00 and a security agreement. The note was secured by a lien on a 40' x 50' metal building (“building”) and contents, as reflected in the security agreement. The building was used as a restaurant at the marina site on land leased from the U.S. Army Corps of Engineers.
Coker moved to West Texas in September of 1982 after closing the marina. In October of 1982, Marina stopped making payments on the note to Bank. Jim Hatler, president of Bank, sent a letter to Coker notifying him that the Marina’s note was in default, accelerating payment and declaring the note due. Hatler also stated in the letter:
Although we have not contacted you in writing concerning your default and the Bank’s acceleration, we would ask that you permit the sale of our security on the 16th of November, 1982 in an effort to help all parties concerned.
If you approve, write me a letter, by return mail, authorizing the Bank to include its collateral with the public auction of November 16, 1982.
If you are not in agreement with this, then please accept this letter as our notice that at 11:00 o’clock a.m. on the 22nd *133 day of November, 1982, or at any time thereafter, from time to time until sold, a private sale will be held to sell the collateral as referred to above.
Though not stated in the letter, testimony indicated that the balance of the note at the time of default was between $24,000.00 and $25,000.00.
Coker testified that after receiving the letter, he called Hatler and told him to go ahead and sell the building if he could get anything for it and to apply the proceeds to Marina’s note. At trial, the following exchange took place between the Insurance Company’s attorney and Coker:
Q: All right. So from this testimony here you knew that they were going to sell it at the auction and you gave Mr. Hatler permission to sell it at the auction, didn’t you? That what that says?
A: Well, yes, basically it does, but not—
Q: All right ... You gave him permission to sell it, didn’t you?
A: Yeah, if it was beneficial to both of us.
The public auction referred to by Hatler in his letter was to be conducted by Commercial National Bank, the lienholder on other property at the marina. Marina had also defaulted on its notes to Commercial National Bank. After Coker’s telephone conversation with Hatler, a flyer advertising the public auction was sent out, which included the building as one of the items to be offered. Ladon Farmer was present at the auction and testified that he bought everything but the building. Farmer testified that he bid $5,000.00 for the building, but the president of Bank made the high bid of $25,000.00. Jerry Baker, an officer with Commercial National Bank, also heard Hatler announce a bid of $25,000.00 to purchase the building. According to Baker, “Jim Hatler, on behalf of Texas National Bank, made the high bid at the auction, which it appeared at the time the auctioneer accepted ... the auctioneer did accept that bid.” Ralph Segars, the auctioneer, testified that he sold the building to whoever it was that was bidding for the Bank. There is a discrepancy as to the amount of the bid, because Segars testified that the Bank bid $20,000.00 instead of $25,000.00.
Witnesses for Bank testified that Marina’s loan was "charged off” on January 18, 1983. Several witnesses explained that by charging off the note, the balance was taken out of “loan accounts” and rebooked into “bank repos.” Bank insists that the charge off does not necessarily indicate foreclosure of the collateral, but that the Comptroller of the Currency requires a loan’s removal from loan accounts when it is no longer accruing interest. Bank’s ledger shows that no credit was given Marina’s account for the Bank’s purchase of the building at auction, and several Bank employees and officials testified that no foreclosure had occurred.
Fire totally destroyed the building on March 28, 1983. Proof of loss was filed with the Insurance Company. Bank’s claim was rejected because of failure to notify Insurance Company of a change of ownership under the mortgage clause. Insurance Company also rejected the Marina’s claim for insurance. In its answer to Marina’s petition, the Insurance Company asserts that the Marina did not have an insurable interest in the building at the time of the fire.[1]
Trial was before the court. A judgment was rendered in favor of Marina and Bank for the $40,000.00 face amount of the policy, attorney’s fees, 10% post-judgment interest and costs of court. A myriad of findings of fact were made by the trial court, but those relevant to the points on appeal are:
20. The Plaintiff did not agree to or authorize the sale of the restaurant building and contents at the Commercial National Bank of Nacogdoches fore *134 closure auction sale on November 16, 1982.
21. The Plaintiff was not notified that the restaurant building and contents were to be sold without Plaintiff’s agreement to such sale at the Commercial National Bank of Nacogdoches foreclosure auction sale on November 16, 1982.
26. The auctioneer “struck off” and purported to sell the subject restaurant building to the Intervenor TEXAS NATIONAL BANK OF LUFKIN upon a bid by one Jim Hatler, who was acting on behalf of the said Intervenor.
27. There was no bill of sale or other documentation of an actual sale of the subject restaurant building at the Commercial National Bank of Nacogdoches foreclosure auction sale on November 16, 1982.
28. There was no money or other consideration paid to Plaintiff by Intervenor for a sale of the subject restaurant building, and there was no credit given to Plaintiff by Intervenor on Plaintiff’s indebtedness for such a sale.
33. The Defendant had actual notice of the purported sale of the restaurant building at the Commercial National Bank of Nacogdoches foreclosure auction sale, and acknowledged the same by written memorandum to the Intervenor dated December 30, 1982, which memorandum contained a request to return the subject insurance policy for cancellation.
The trial court made the following conclusions of law which apply to this appeal:
1. The subject insurance policy was in full force and effect on the date of the subject fire loss in this case, as to both the Plaintiff-Insured JACKSON HILL MARINA, INC. and the Intervenor-Mort-gagee TEXAS NATIONAL BANK OF LUFKIN.
2. There was no valid, legal or binding sale, either foreclosure or otherwise, of the subject restaurant building at the Commercial National Bank of Nacogdo-ches foreclosure auction sale held November 16, 1982.
3. There was no change of ownership of the subject restaurant building during the policy period of the subject insurance policy.
4. On the date of the subject fire loss in this case, the Plaintiff JACKSON HILL MARINA, INC. was the owner of the subject restaurant building and the Inter-venor TEXAS NATIONAL BANK OF LUFKIN was the Mortgagee holding a lien on same.
X * * * * *
Insurance Company asserts on appeal that the trial court erred in entering judgment for Bank and Marina because the evidence established as a matter of law that a change in ownership of the building had occurred, thereby invalidating the policy as to Marina, or that the trial court’s finding that the policy was in effect at the time of the fire was against the great weight and preponderance of the evidence. In its third point of error, Insurance Company contests the trial court’s finding that it had actual notice of the sale, and the judgment in favor of Bank based on that finding.
As to the judgment in favor of Marina, the controlling question is whether there was a change in ownership of the building before the fire. We find that the evidence conclusively shows that there was a change of ownership from Marina to Bank on November 16, 1982, the date of the public auction. The trial court and appellees have ignored the consequences of Bank’s action at the auction. The evidence is undisputed that the building was offered for sale, a bid of $5,000.00 was made and that Jim Hatler, on behalf of Bank, made a higher bid to protect the Bank’s interest. Although the testimony conflicts as to the exact amount of Bank’s bid, that bid was accepted by the auctioneer.
Tex.Bus. & Comm.Code Ann. § 2.328(b) (Vernon 1968) states, “A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner.” Where the owner of property (or the owner of a security inter *135 est in property, pursuant to a security agreement) instructs an auctioneer to sell it, and a sale is held, a bidder to whom the property is declared to be sold acquires ownership thereof. 7 Tex.Jur.3d Auctions and Auctioneers § 5 (1980).
Bank and Marina in effect argue that the sale at the auction was void and of no effect because Marina received improper notice of the sale as required by the security agreement and Tex.Bus. & Comm.Code Ann. § 9.504(c) (Vernon Supp.1986). Although there is some evidence that Coker orally agreed to a sale of the building at Commercial National Bank’s auction, we agree that Texas National Bank did not comply with the notice provisions of the security agreement or satisfy the reasonable notice requirements under § 9.504(c)[2]. See Garza v. Brazos County Federal Credit Union, 603 S.W.2d 298 (Tex.Civ.App.—Waco 1980, no writ). However, we do not believe that the lack of required notice invalidates Bank’s purchase of the building. In Kolbo v. Blair, 379 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1964, writ ref’d n.r.e.), a mortgagee sought a deficiency judgment against the debtor after purchasing collateral without express authority in the mortgage instrument. The court held that while the sale was voidable in equity for good grounds, it was not absolutely void.
A debtor who does not receive adequate notification of a sale has a right to recover from the secured party any loss caused by failure to comply with the notice provisions. Tex.Bus. & Comm.Code Ann. § 9.507 (Vernon Supp. 1986). Presumably, equitable rescission would be available to set aside a sale of personal property as well as of real property, but only if Marina had satisfied its debt to Bank. See Pachter v. Woodman, 534 S.W.2d 940 (Tex.Civ.App.—Tyler 1976), rev’d on other grounds, 547 S.W.2d 954 (Tex.1977); W. Mike Baggett, Texas Foreclosure Law and Practice § 3.89 (1984). There is no evidence in the record, however, that Marina attempted to set aside the sale to Bank. Neither is there evidence of an agreement between Marina and Bank to set aside the sale before the fire. “ ‘That which is voidable operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared.’ ” Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671, 674 (1942). No attempt having been made by Marina to set aside the voidable sale, Bank acquired ownership of the building prior to the loss.
The court in Lowe v. Michigan Fire & Marine, 236 S.W.2d 168, 172 (Tex.Civ.App.—Beaumont 1950, writ ref'd.), citing Insurance Company of North America v. O’Bannon, 109 Tex. 281, 206 S.W. 814, 885 (1918), stated:
“It is settled law in this state that a fire insurance policy is not violated by a change of title ‘not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire.’ ”
Marina no longer occupied the building. Bank’s purchase of the building at auction diminished Marina’s motive to protect the building against fire. According to the security agreement, Bank was obligated to credit Marina’s account with the amount bid after deduction of the expenses of the sale, although the evidence showed Marina’s account had not been credited; Marina might still be held liable for any deficiency whether the building later burned or not.
We find that the evidence establishes as a matter of law that a change of ownership within the meaning of the policy occurred on November 16, 1982, when the Bank’s bid was accepted by the auctioneer. Consequently, the insurance policy was not in effect as to Marina on the date of the fire. That portion of the judgment entered in favor of Marina is reversed and rendered.
We now consider whether Bank was entitled to recover under the mortgage clause. The mortgage clause provides that *136 the mortgagee shall notify the insurance company of any change of ownership or increase of hazard which comes to the knowledge of the mortgagee. Failure by the mortgagee to comply with the notice provision would render the insurance under the policy null and void as to the interest of the mortgagee. We believe that the trial court was correct in its finding that the Insurance Company had actual notice of the sale of the restaurant building. Tex. Bus. & Comm.Code Ann. § 1.201(25) (Vernon 1968) provides that a person has notice of a fact when he has actual knowledge of it. On December 30, 1982, a memo was sent from Agency to Bank which said, “We understand Jackson Hill Marina, Inc. was sold at auction on 11-17-82. Please return F3793670 to us for cancellation.” The memo clearly indicates that Insurance Company, through its agent, was aware of the change of ownership and was intending to act on that knowledge.
The purpose of the mortgage clause is to protect the security interest of one who has advanced money to another for the purchase of property. Helmer v. Texas Farmer’s Insurance Company, 632 S.W.2d 194, 196 (Tex.App.—Ft. Worth 1982, no writ). Accordingly, when a mortgagee reduces the indebtedness by purchasing property at a foreclosure sale, the amount of the mortgagee’s interest is limited to the amount of the deficiency remaining on the note after the sale. Helmer, 632 S.W.2d at 196. In Campagna v. Underwriters at Lloyd’s London, 549 S.W.2d 17 (Tex.Civ.App.—Dallas 1977, writ ref’d n.r.e.), a mortgagee sought to recover an indebtedness under a fire insurance policy issued to the mortgagor with a mortgage clause identical to the one in the present case. The mortgagee purchased the real property securing its note at foreclosure sale in which a trustee’s deed was executed reciting consideration. The court in Cam-pagna held that a mortgagee’s insurable interest under an insurance policy containing a loss payable to mortgagee clause is limited to the indebtedness which the mortgagor owes under the note and mortgage. See also Merrimack Mutual Fire Insurance Company v. Allied Fairbanks Bank, 678 S.W.2d 574 (Tex.App.—Houston [14th Dist.] 1984, writ ref’d n.r.e.); Cambridge Mutual Fire Insurance Company v. Newton, 638 S.W.2d 75 (Tex.App.—Dallas 1982, writ ref’d n.r.e.). The indebtedness in Campagna was reduced by the amount reflected in the trustee’s deed, and the mortgagee was entitled to recover from the insurance company only that remaining portion of the debt.
In the case at hand, there is no bill of sale reflecting the amount of consideration given for the building. Marina’s debt should have been reduced by the amount bid at sale less the amount of any allowable expenses connected with the sale. It is unclear from the record exactly how much Marina’s account should have been credited after Bank’s purchase of the building. It is therefore necessary that this cause be remanded to the trial court for determination of the amount, if any, still owed on Marina’s indebtedness after Bank’s purchase. Insurance Company would be liable to Bank for that remaining amount only.
The judgment of the trial court is reversed and rendered in part, and reversed with the cause being remanded in part to the trial court for determination of the fact question presented herein.

. Insurance Company rejects Marina's claim on the basis of the following provision contained in the policy:
“Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring ... (d) following a change in ownership of the insured property....”

. Section 9.504(c) provides that a debtor may waive notification of sale by signing after default a statement renouncing or modifying his right to notification.