818 P.2d 200

**Robert W. BYERS, as Trustee under and on behalf of the American Security Investments Trust, and The American Security Investments Trust, Plaintiffs–Appellants,**

v.

**Martin WIK and Paula Wik, Defendants–Appellees.**

**No. 1 CA–CV 89–576.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 10, 1991.

---

Schmitt, Fisher & Herrod, P.C. by Peter F. Fisher and John D. Burkholder, Phoenix, for plaintiffs-appellants.

Gammage & Burnham by Richard B. Burnham and Kevin J. Blakley, Phoenix, for defendants-appellees.

## OPINION

SHELLEY, Judge.

Appellants Robert W. Byers and the American Securities Investments Trust (the Trust) appeal from a judgment dismissing their complaint to quiet title to a parcel of real property in Maricopa County which appellees Martin and Paula Wik (the Wiks) purchased at an execution sale. This appeal presents the following issues: (1) whether real property transferred by a judgment debtor to a third party, subject to a judgment lien, may be levied upon in the hands of the third party and sold pursuant to A.R.S. § 12–1553; (2) whether a third party to whom a judgment debtor has transferred real property subject to a judgment lien has a due process right to actual

notice of a sheriff's sale of the property, where the third party's identity and address are easily ascertainable from the public record; and (3) whether the Trust was required to tender to the Wiks the redemption price established by A.R.S. § 12–1281 *et seq.* as a condition precedent to bringing the instant action to quiet title to the real property.

## FACTS AND PROCEDURE BELOW

The facts necessary to our decision are largely undisputed. On July 1, 1987, the former spouse of Charles M. Byers recovered a judgment against him. Pursuant to A.R.S. § 33–961 *et seq.*, Ms. Byers' judgment was recorded on July 7, 1987, in the Office of the County Recorder of Maricopa County.

Charles M. Byers owned a parcel of real property on North Cave Creek Road in Phoenix. On August 1, 1987, he executed a document entitled "The Establishment of American Security Investments an Irrevocable Trust." The trust document stated that Byers "hereby irrevocably transfer[s]" the property into the American Security Investments Trust. The document recited that the purpose of the Trust was to provide an income for Charles M. Byers' three daughters. The document designated appellant Robert W. Byers, Charles M. Byers' younger brother, as managing trustee. It further provided in pertinent part:

> The duties of the Managing Trustee are to manage the property, collect funds as they are due, and to disburse the excess funds as they become available.
>
> As long as no outright theft occurs, the Managing Trustee has no personal responsibility for the condition of the Trust.
>
> Charles M. Byers will have the first option on leasing the premises involved in this Trust. The terms and conditions will be as approved by the Managing Trustee.

On August 11, 1987, Charles M. Byers executed a warranty deed conveying the Cave Creek Road property to "American Security Investments (a Trust)." The deed reflected the address of the grantee as 2712 64th Pl. N., St. Petersburg, Fla. 33702. On September 2, 1987, this deed was recorded in the Office of the County Recorder of Maricopa County.

On June 28, 1988, the clerk of the superior court issued a writ of general execution in aid of Ms. Byers' judgment against Charles M. Byers. Pursuant to the writ, on July 28, 1988, the Sheriff of Maricopa County levied on the property previously conveyed by Charles M. Byers to the Trust. In August of 1988, the sheriff published a "Sheriff's Notice of Sale of Real Property on Execution" in four successive issues of the *Arizona Business Gazette*. The notice of sale stated that the property on which the sheriff had previously levied execution would be sold at public auction on September 1, 1988. No actual notice of the execution sale was provided to Charles M. Byers or to the Trust.

At the sheriff's sale on September 1, 1988, appellees Martin and Paula Wik purchased the property for $90,500.00. This covered the full amount of the judgment with interest and costs, and left an overpayment of $2,836.07. A "Sheriff's Certificate of Sale of Real Estate on Execution" was recorded in the Office of the Maricopa County Recorder on September 20, 1988. After expiration of the six month period of redemption, *see* A.R.S. § 12–1282(B), the Maricopa County Sheriff executed a sheriff's deed conveying the property to the Wiks. The sheriff's deed was recorded in the Office of the Maricopa County Recorder on March 31, 1989.

The Trust brought the instant quiet title action against the Wiks and the Maricopa County Sheriff on May 1, 1989. The complaint did not allege that the Trust had tendered any amount to the Wiks to redeem the property.

The Wiks moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. The trial court granted the motion to dismiss. The trial court stated in part as follows:

> There is no allegation that the sheriff did not comply with A.R.S. § 12–1621(A).

I have carefully considered all of the authorities presented by counsel and believe that pursuant to the reasoning of *Cagle v. Carlson,* 146 Ariz. 292, 705 P.2d 1343 (App.1985), *cert. denied* 476 U.S. 1108 [106 S.Ct. 1956, 90 L.Ed.2d 365] (1986), and because of the settlor-trustee and sibling relationship between Charles W. Byers [sic] and Robert W. Byers and further because the Court cannot hold that A.R.S. § 12-1621(A) is unconstitutional, Defendants' Motion to Dismiss is GRANTED.

The trial court entered a formal judgment in accordance with its ruling on August 21, 1989. The Trust filed its notice of appeal on September 21, 1989, one day late. The Trust later moved for a delayed appeal pursuant to Rule 60(c), Arizona Rules of Civil Procedure, and *City of Phoenix v. Geyler,* 144 Ariz. 323, 697 P.2d 1073 (1985). Appellees Wik did not oppose the motion. By minute entry of March 15, 1990, the trial court granted the motion. We have jurisdiction pursuant to A.R.S. § 12-2101(B).

## EXECUTION UPON REAL PROPERTY PREVIOUSLY TRANSFERRED TO THIRD PARTY BY JUDGMENT DEBTOR AGAINST WHOM JUDGMENT LIEN HAS BEEN PERFECTED

We first consider the Trust's contention that the sheriff's execution sale could not have transferred ownership of the property to the Wiks. The Trust cites *Freeman v. Wintroath Pumps–Division of Worthington Corp.,* 13 Ariz.App. 182, 475 P.2d 274 (1970), for the proposition that a judgment debtor has full power to transfer his land subject to the judgment lien. The Trust asserts that a judgment lien only gives the judgment creditor the right to levy on land actually owned by the judgment debtor. Because Charles M. Byers had transferred his entire interest in the property to the Trust by the time of the levy of execution, the Trust argues, the sheriff had no power to sell the property to the Wiks, and the Wiks acquired no interest in the property as a result of the execution sale. The Trust admits that the property remained subject to the judgment lien after Charles M. Byers transferred the property, but contends this meant only that the judgment creditor could have brought an action to foreclose the judgment lien pursuant to A.R.S. § 12-1635.

The Trust's analysis is fatally flawed in several respects. It is true that the perfection of a judgment lien does not disable the judgment debtor from transferring his real property subject to the lien. However, the Trust overstates the significance of this principle. Contrary to the Trust's argument, a judgment debtor does not immunize his liened property from execution by transferring it to a third party. A.R.S. § 12-1553(2) provides:

A general execution shall state the amount of the judgment and costs and the amount due thereon, and shall require the officer:

. . . .

(2) If the judgment is a lien upon real property, then to satisfy the judgment out of the real property *belonging to the judgment debtor on the day when the judgment became a lien or at any time thereafter*. . . . [Emphasis added.]

In *Freeman,* we stated:

A judgment lien is a right given the judgment lien creditor to have his claims satisfied by the seizure of the land of his judgment debtor. The judgment lien gives the creditor no estate of any kind in the land. It is merely a right to levy on any such lands for the purpose of satisfying the judgment *to the exclusion of the rights of others that may have attached subsequent to the judgment lien.*

13 Ariz.App. at 184, 475 P.2d at 276 (emphasis added).

Arizona Revised Statutes § 12-1553(2) makes it clear that where a judgment lien has been perfected against the judgment debtor, the judgment creditor may satisfy the judgment by executing on any real property that belonged to the judgment debtor when the judgment was

recorded. The statute's plain language mandates this result even if the judgment debtor later transfers the liened real property to a third party. It is this feature that makes the judgment lien a true lien, and hence a means of collection that cannot easily be frustrated. *Cf. Boone v. Grier,* 142 Ariz. 178, 688 P.2d 1070 (App.1984) (judgment creditor who attempts to execute against real property without a lien is open to potential loss of rights to bona fide purchaser). *Cf. Walker v. Davies,* 113 Ariz. 233, 550 P.2d 230 (1976) (judgment lien may be foreclosed either by levy and sale or by separate suit for equitable decree of foreclosure).

*Steinfeld v. Copperstate Mining Co.,* 37 Ariz. 151, 290 P. 155 (1930), and *Burney v. Lee,* 57 Ariz. 41, 110 P.2d 554 (1941), do not support the Trust's contention that a writ of execution cannot reach property transferred by the judgment debtor after the lien of judgment has attached. Those cases concerned property that the judgment debtors did not own at the time the judgments in question were recorded or thereafter. By contrast, in this case there is no dispute that Charles M. Byers was the owner of the property in question when Ms. Byers recorded her judgment.

## TRUST'S RIGHT TO ACTUAL NOTICE OF THE EXECUTION SALE

■ Arizona Revised Statutes § 12–1621(A)(3) provides:

A. Notice of sale under execution shall be made as follows:

....

3. For the sale of real property, notice shall be given by posting notices for not less than fifteen days successively before the day of sale in three public places in the county, one of which shall be at or near the courthouse door, and publishing a copy thereof in a newspaper for three weeks before the day of sale.

No notice beyond compliance with A.R.S. § 12–1621(A)(3) was given in this case. The Trust argues that conducting the execution sale with no additional effort to give the Trust actual notice violated its right to due process of law and therefore invalidated the sale. We agree.

In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the controversy before the United States Supreme Court questioned the constitutional sufficiency of notice by publication in a newspaper of a hearing for the settlement of the accounts by a trustee of a common trust fund. The Court stated:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.] The notice must be of such nature as reasonably to convey the required information ..., and it must afford a reasonable time for those interested to make their appearance....

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, ... or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

339 U.S. at 314–15, 70 S.Ct. at 657–58. *Accord Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (notice of water rights condemnation proceeding by posting and newspaper publication insufficient to comply with due process where owner's address was known to condemning authority); *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (notice by newspaper publication of pending condemnation of land did not satisfy due process where

landowner's name was known to city officials). In *Schroeder*, the Court stated:

> The general rule that emerges from the Mullane case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question.

371 U.S. at 212–13, 83 S.Ct. at 282.

In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Supreme Court held that an Indiana tax sale violated the due process rights of a mortgagee who was not given prior notice of the sale by mail or personal service. The Court stated:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. [Citation omitted.] When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgage is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane.

462 U.S. at 798, 103 S.Ct. at 2711.

The *Mennonite* court also rejected the view that notice by publication satisfied due process where the party in question was commercially sophisticated or was aware of circumstances that made a tax sale likely. The Court stated:

> Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are therefore likely to be initiated. In the first place, a mortgage need not involve a complex commercial transaction among knowledgeable parties, and it may well be the least sophisticated creditor whose security interest is threatened by a tax sale. More importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation. It is true that particularly extensive efforts to provide notice may often be required when the State is aware of a party's inexperience or incompetence. [Citations omitted.] But it does not follow that the State may forgo even the relatively modest administrative burden of providing notice by mail to parties who are particularly resourceful. [Citation omitted.] Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. Furthermore, a mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending. The latter 'was the information which the [county] was constitutionally obliged to give personally to the appellant—an obligation which the mailing of a single letter would have discharged.' *Schroeder v. New York City*, 371 U.S. at 214, 83 S.Ct. at 283, 9 L.Ed. 255.

462 U.S. at 799–800, 103 S.Ct. at 2711–12 (emphasis in original).

The Arizona courts have recognized and applied the rule established by *Mullane* and its progeny. In *Laz v. Southwestern Land Co.*, 97 Ariz. 69, 397 P.2d 52 (1964), a mortgagee did not learn that the property in which she had an interest had been sold to satisfy an unpaid municipal assessment lien until she received a quitclaim deed prior to the buyer's quiet title action. On appeal from summary judgment for the buyer, our supreme court reversed, holding that notice of the assessment proceedings by publication was not reasonably calculated under all the circumstances to apprise the mortgagee of the action and afford her an opportunity to present objections. Relying on *Mullane* and *Schroeder*, the court stated that the names and addresses of those with a record interest, including the mortgagee, were readily available, and they were therefore entitled to actual notice.

In *Mason v. Wilson,* 116 Ariz. 255, 568 P.2d 1153 (App.1977), the buyer of property subject to a judgment lien became aware of the lien and repeatedly contacted the judgment creditors to attempt to settle the judgment. In the meantime, the judgment creditors held a sheriff's sale without giving actual notice to the buyer, and bought the land themselves for $367.41. The judgment creditors obtained a judgment quieting title in themselves, but this court reversed on appeal. After noting that Arizona statutory law required no actual notice at any stage of an execution proceeding, we stated:

> Whether notice was required to be given in spite of the statute is a matter of constitutional law. The U.S. Supreme Court has held that notice and an opportunity to be heard are fundamental requisites of due process. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The general rule that emerges from *Mullane* is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. Under the circumstances here, we disagree with appellee that a right to notice by appellants is a 'frivolous' claim. Appellants, as well as the Pekruls, by virtue of their respective interests in the property were directly affected by the proceedings and should have received actual notice.

116 Ariz. at 257–58, 568 P.2d at 1155–56.

In this case, the Trust was a party whose property interests would clearly be adversely affected by the sheriff's sale of the property. Its name and address were prominently displayed on the public record of documents affecting title to the property. Accordingly, pursuant to United States Supreme Court and Arizona case law, no valid sheriff's sale could have been held without according the Trust "[n]otice by mail or other means as certain to ensure actual notice...." *Mennonite,* 462 U.S. at 799–800, 103 S.Ct. at 2712. It is undisputed that the Trust was not given notice by mail. What remains to be determined is whether, under the circumstances of this case, the Trust was accorded notice by a means to ensure actual notice.

The Wiks respond to this inquiry in the affirmative using a three-part analysis. First, the Wiks observe that in *Cagle v. Carlson,* 146 Ariz. 292, 705 P.2d 1343 (App. 1985), we held that notice of an execution sale by posting and publication is constitutionally sufficient notice *to the judgment debtor.* Second, the Wiks urge that in this case, judgment debtor Charles M. Byers had such strong interests in common with the Trust, the Trustee, and the Trust beneficiaries that adequate notice to Charles M. Byers constituted adequate notice to the Trust. Finally, the Wiks urge that Trustee Robert W. Byers should have suspected that his brother's ex-wife was pursuing the property to collect her judgment, and that this placed him under a duty to check with the County Recorder and Ms. Byers, from whom he would have become aware of the judgment lien and the sheriff's sale.

The Wiks' analysis fails to convince us that the notice accorded to the Trust in this case complied with current due process standards.

In *Cagle,* the judgment debtor had his day in court and had full knowledge of the entry of the judgment against him. Furthermore, a judgment debtor is presumably aware of the right to record a judgment debt thereby creating a lien on any real property owned by the judgment debtor as of the day of recording (A.R.S. §§ 33–961 and –964).

The cases analyzed herein involved due process rights of parties not in the position of a judgment debtor. In *Mullane,* the rights of beneficiaries of a trust were involved. The *Mennonite* case involved due process notice rights of a mortgagee with respect to a tax sale. The mortgagee would not necessarily have any information that the mortgagor had failed to pay the taxes. In condemnation cases, there is nothing to alert the land owner that his land is being condemned until he receives the actual notice. In this case, the only

issue before us is sufficiency of the notice with regard to the Trust as transferee of the property after the judgment was recorded. Charles M. Byers, the judgment debtor, was never made a party to this case.

■ The Wiks' reliance on *Cagle* is misplaced. The *Cagle* case concerned the distinct question whether the judgment debtor himself has a due process right to actual notice of an execution sale. We held that the judgment debtor has no such right, relying primarily on *Endicott–Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924). In *Endicott–Johnson Corp.*, the United States Supreme Court held that due process did not entitle a judgment debtor to actual notice and an opportunity to be heard before collection of the judgment was undertaken through post-judgment garnishment process. In *Cagle*, we stated:

> [A]ppellant received personal notice of the original foreclosure proceeding, was represented by counsel and appeared therein several times. The entry of judgment placed the appellant and certainly his counsel upon notice that execution could follow. Also, notice by recording was made subsequent to the sheriff's sale, and the appellant still had the statutory redemption under which to assert his rights.

146 Ariz. at 297, 705 P.2d at 1348.

In contrast, we do not deal in this case with the personal rights of the judgment debtor, but rather those of a third person who was not a party to the underlying adjudication. The factors outlined in *Cagle*

that were deemed to be a constitutionally adequate substitute for actual notice to the judgment debtor simply do not exist with respect to a third person to whom the judgment debtor makes a transfer of assets. The principles of *Mullane* and *Mennonite* therefore control.

Moreover, contrary to the Wiks' implicit suggestion, *Cagle* did not hold that notice by posting and publication was for all purposes deemed to be the equivalent of actual notice to the judgment debtor. *Cagle* merely held that because of the judgment debtor's unique circumstances, due process did not require that he receive actual notice as a matter of constitutional right.

We also reject the Wiks' argument that due to Charles M. Byers' interests in common with the Trust, "[t]he notice to Charles Byers is sufficient notice to the Trust." Because the Trust's name, address, and interest in the property were easily ascertainable from the public record, under *Mullane* and its progeny, the Trust had a right to reasonable prior notice of the execution sale either by mail or by some other means equally likely to provide it with actual notice. It seems quite clear that posting and publishing notice of the execution sale in Maricopa County, where the Trustee's brother may or may not have seen or understood it, was substantially less likely to result in the Trust's receiving actual notice in St. Petersburg, Florida, than simply sending notice to the Trust by mail.[1]

■ The right to notice of the execution sale by mail or its equivalent belonged to

---

1. The Wiks assert: "[W]here parties have strong common interests, notice to one is sufficient notice to the others because it is substantially likely to inform the others." (Answering brief at 8.) None of the three cases the Wiks cite for this proposition supports it. Contrary to the Wiks' assertion, *Freezer v. Carlin*, 42 Colo.App. 226, 591 P.2d 1348 (1979), did not hold that notice to a general partner is sufficient notice to the limited partners as individuals. *Freezer* held only that notice to the general partners of a limited partnership in their capacities as general partners is sufficient notice to the *limited partnership*. Similarly, *Ackel v. Ackel*, 83 Ariz. 207, 318 P.2d 676 (1957), did not hold or even imply that service on a father would be sufficient

notice to his minor child to comport with due process. Indeed, as the court recognized, Rule 4(d)(2), Arizona Rules of Civil Procedure, provides for service of process on both the parent or guardian *and* the minor child. *Ackel* held only that serving the father on the minor's behalf did not make the father a party to the action. Finally, *Bowen v. Graham*, 140 Ariz. 593, 684 P.2d 165 (App.1984), merely held that substituted service on a defendant at his "usual place of abode" pursuant to Rule 4(d)(1), Arizona Rules of Civil Procedure, must be at the place where he normally actually resides so that service will be substantially likely to bring home notice to him.

the Trust, and that right was not satisfied by the means employed here.

■ Finally, we consider the Wiks' contention that the circumstances of the transfer to the Trust gave rise to "inquiry notice" to Trustee Robert W. Byers and placed him under a duty to investigate further. The Wiks argue, "[W]hile due process requires actual notice to persons who are ignorant of facts through no fault of their own, persons who unreasonably ignore suspicious circumstances should not be able to hide behind this constitutional doctrine." We reject the view that these considerations excused the failure to give the Trust prior notice of the execution sale by mail or its equivalent. The record contains no evidence that the Trustee was aware of any suspicious circumstances involved in connection with the transfer to the Trust. Further, nothing in *Mullane* or its progeny suggests that a known party entitled to notice of a proceeding will forfeit that right by ignoring suspicious circumstances or other misconduct. As the United States Supreme Court stated on an analogous point:

> [A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.... Furthermore, a mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending. The latter 'was the information which the [county] was constitutionally obliged ... to give personally to the appellant—an obligation which the mailing of a single letter would have discharged.' *Schroeder v. New York City,* 371 U.S., at 214, 83 S.Ct., at 283.

*Mennonite,* 462 U.S. at 799–800, 103 S.Ct. at 2712.

The failure to give reasonable prior notice of the execution sale to the Trust by mail or other means equally certain to ensure actual notice violated the Trust's right to due process of law. The execution sale was therefore invalid as against the Trust.

### THE TRUST'S FAILURE TO TENDER THE REDEMPTION PRICE BEFORE BRINGING THE INSTANT ACTION

The Wiks assert that the Trust's failure to receive actual notice of the execution sale could only have deprived it of its right to redeem the property under A.R.S. § 12–1281 *et seq.* They assert:

> Equity does not allow a plaintiff to receive the benefit of a statutory redemption without having to at least offer to pay the cost. *Cagle v. Carlson,* 146 Ariz. 292, 705 P.2d 1343 (App.1985). Appellant's failure to tender this redemption price renders any equitable relief inappropriate.

In response, the Trust argues that it did not need to tender or pay a redemption price because the execution sale conveyed no interest to the Wiks. The Trust further states that if this court finally determines that the Wiks are entitled to recover the redemption price as a condition of recovering the property, "then such amounts will be paid as a condition to receiving the land."

The Wiks' reliance on *Cagle* is misplaced. Unlike the instant case, *Cagle* involved an effort by the judgment debtor himself to set aside an execution sale. The holding in *Cagle* is specific to an attempt by a judgment debtor to set aside an execution sale, and does not support the Wiks' contention that the Trust was required to tender the redemption price to the Wiks as a condition precedent to bringing this action.

■ However, foreclosure, whether it be by sale or court action, is equitable in nature. The present action is one for quiet title. In the case of *Kennedy v. Morrow,* 77 Ariz. 152, 155–56, 268 P.2d 326, 329 (1954), our supreme court stated:

> The principal contention of plaintiff, which is repeated time and again in their lengthy briefs, comprising in all 179 printed pages, is that a patent proprio vigore imparts to itself absolute verity and that it may not be attacked in any manner save by an action brought before the state land commissioner, and that a claim in equity such as is presented by defendant in the case at bar is a collateral attack upon a patent which the law will not countenance. Based upon this

reasoning, plaintiff believed all that was necessary as a predicate for quieting her title was the introduction of her patent, and that she thereby not only established her own right, but also precluded any showing of a defense thereto. This was, of course, an insufficient predicate for affirmative relief, because we decided, in *City of Phoenix v. Hughes*, 36 Ariz. 399, 286 P. 191, 193, that *a suit to quiet title is one of equitable cognizance and that when parties resort to it their cause must affirmatively present some equities; i.e., ' * * *. They must not only show that the interest they seek to cancel is adverse to theirs, but that it would be inequitable to let it stand.'* [Emphasis added.].

The foregoing is consistent with the maxim, "He who seeks equity must do equity." There is no question with respect to the validity of the lien nor the amount of the lien. If the Trust had received actual notice of the sale, it would have been in a position to exercise its right of redemption pursuant to A.R.S. § 12–1281 *et seq.*

*Restatement of Law on Restitution* § 161, reads:

> Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises.

In this case, the Trust would be unjustly enriched by the payment of the judgment thereby extinguishing the lien when the property was purchased by the Wiks. The Wiks, in good faith, purchased the property. At the very least, they would have an equitable lien on the property. However, the delay and expense of foreclosing on an equitable lien with the subsequent redemption period which would follow would not give an equitable result.

■ Based on equitable principles, as a condition of the entry of a decree in favor of the Trust quieting title to the property, the Trust shall pay to the Wiks, within six months from the date of the mandate in this case, the redemption amount calculated pursuant to A.R.S. § 12–1285, less the amounts of encumbrances, if any, placed on the property as a result of the Wiks' record title to the property as shown by a preliminary title report. The report shall be paid for by the Wiks. If redemption is made, the trial court shall quiet title in the Trust. If the Trust fails to pay the redemption amount within the allotted time, the trial court shall quiet title in favor of the Wiks.

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this decision.

CLABORNE, P.J., and GRANT, J., concur.