258 P.3d 281

SOURCECORP, INCORPORATED,
Plaintiff/Appellee,

v.

Dean D. NORCUTT and Stacey L.
Norcutt, husband and wife,
Intervenors/Appellants.

No. 1 CA–CV 10–0212.

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 2, 2011.

Steptoe & Johnson L.L.P. By Bennett Evan Cooper, Douglas D. Janicik, Phoenix, Attorneys for Plaintiff/Appellee.

Mariscal, Weeks, McIntyre & Friedlander, P.A. By Michael R. Scheurich, Anne L. Tiffen, Robert C. Brown, Phoenix, Attorneys for Intervenors/Appellants.

## OPINION

WINTHROP, Judge.

¶1 Dean and Stacey Norcutt appeal·the trial court's summary judgment in favor of Sourcecorp, Incorporated ("Sourcecorp"). The judgment allows Sourcecorp to proceed with a forced sale of the Norcutts' home ("the Property") in partial payment of a money judgment Sourcecorp obtained against Steven and Rita Shill, the former owners of the Property. The Norcutts contend the trial court erred in finding they were not equitably subrogated to a first lien position by paying off the Shills' mortgage with Zions Bank.

¶2 Existing Arizona law recognizes the right of one lender to pay off a senior real property lien and thereby become equitably subrogated to that senior position over a junior lienholder. Under the facts presented here, we extend the doctrine to allow a cash purchaser who pays off a senior mortgage to be equitably subrogated into that position over a junior judgment lienholder. Accordingly, and as more fully set forth below, we reverse the judgment in favor of Sourcecorp and remand with directions to enter judgment in favor of the Norcutts.

### FACTS AND PROCEDURAL HISTORY

¶3 In September 2004, Sourcecorp obtained a judgment against the Shills in the amount of $3,052,488.27. At the time, the Shills owned the Property, which is located in Prescott, Arizona. In an effort to perfect a judgment lien against the Property, Sourcecorp recorded the judgment in Yavapai County in October 2004, but failed to include the separate information statement required

when recording a money judgment. *See* Ariz.Rev.Stat. ("A.R.S.") § 33–961(C) (2000). In early January 2005, Sourcecorp filed an amendment to the recorded judgment that included the required information statement.

¶ 4 In the meantime, the Norcutts purchased the Property from the Shills for $667,500.00 in cash in November 2004. The majority of those funds—$621,307.36—were used to pay off a first position lien on the Property held by Zions Bank, which accepted the funds in satisfaction of the Shills' outstanding debt of $688,868.78. The purchase price also paid off senior tax liens. The Norcutts' title insurer, First American Title Insurance Company ("First American Title") failed, however, to discover Sourcecorp's judgment lien before the Norcutts purchased the Property.

¶ 5 In late January 2005, the Norcutts filed a Motion to Intervene, Application for Temporary Restraining Order and Preliminary Injunction, and Motion to Quash Writ of General Execution to stop a sheriff's sale of the Property initiated by Sourcecorp. In their motion, the Norcutts asked the trial court to declare that Sourcecorp had no valid lien against the Property because (1) Sourcecorp had not recorded a judgment information statement along with the judgment, (2) the Property was exempt from execution by operation of the homestead laws, and (3) Sourcecorp's judgment was subject and inferior to the Norcutts' interest based on equitable subrogation.

¶ 6 The trial court granted the Norcutts' motion to quash the writ of general execution, finding that the priority of Sourcecorp's judgment lien would date from the time the judgment information statement was filed, the priority applied to purchasers as well as competing liens on the Property, and the Norcutts had a prior interest, making their interest in the Property superior to that of Sourcecorp. Sourcecorp appealed, and in September 2006 this court vacated the judgment, finding that Sourcecorp's failure to attach the money judgment information statement did not invalidate its lien and the trial court "erred in construing the word 'priority' to include not only competing lienholders, but also subsequent purchasers."

*Sourcecorp, Inc. v. Shill,* 1 CA–CV 05–0425, at *13, ¶ 16 (Ariz.App. Sept. 26, 2006) (mem. decision).

¶ 7 On remand to the trial court, the Norcutts reasserted their arguments that the Property was protected from execution by the homestead exemption and that by equitable subrogation they held the priority position previously held by Zions Bank, which they maintained was superior to the position held by Sourcecorp. The Norcutts asserted they had paid off the Zions Bank first position lien and, by equitable subrogation, were therefore substituted into that priority position, despite the recording of the intervening judgment lien.

¶ 8 Sourcecorp argued that the Shills had abandoned the homestead and equitable subrogation could not be applied to allow a purchaser of property to acquire the rights of an extinguished lien ahead of a creditor whose lien existed at the time of the purchase. Sourcecorp maintained that equitable subrogation did not apply because the Norcutts were consumers and not lenders when they purchased the Property, that as owners in fee of the Property the Norcutts had no need to protect their interests with a lien, and that the Norcutts were "volunteers" because they were not forced to pay another's debt to protect their own interest given that they had no prior interest in the Property. Sourcecorp further noted that the Norcutts had paid cash for the Property and none of the documentation associated with the sale indicated anyone was to receive a security interest in the Property.

¶ 9 The trial court granted summary judgment in favor of Sourcecorp, finding that equitable subrogation could not be applied and the Shills had abandoned their right to claim a homestead exemption:

The Court does not and cannot conclude that the Norcutts can hold a lien on their own house for having paid cash and supposedly obtaining equitable subrogation by paying of[f] the first lienholder, Zions Bank.

Arizona's homestead exemption did not preclude Plaintiff's judgment lien was recorded [sic]. Moreover, this Court con-

cludes that the Shills abandoned their right to claim a homestead exemption to the Prescott property. The simple fact is that the Shills waived their homestead exemption rights by selling their home and using it as a source of restitution payments.

¶ 10 The trial court granted Sourcecorp's request for attorneys' fees pursuant to A.R.S. § 12–341.01(A) (2003). The Norcutts appealed from the court's final judgment. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1) (West 2011).[1]

## ANALYSIS

¶ 11 Summary judgment may be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we determine *de novo* whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We view the facts and the inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

¶ 12 The Norcutts argue that the trial court erred in finding they were not equitably subrogated to the first lien position of the Zions Bank mortgage, which was paid off as part of the purchase. Sourcecorp asserts that the Norcutts' equitable subrogation argument is refuted by the statutes and case law governing judgment liens. Pursuant to A.R.S. § 12–1553(2) (2003), a judgment creditor holding a lien upon real property "can satisfy the judgment out of the real property belonging to the judgment debtor on the day when the judgment became a lien or at anytime thereafter." The creditor may therefore seek to satisfy the judgment from the property even if the debtor transfers the property to a third party. *Byers v. Wik*, 169 Ariz. 215, 219, 818 P.2d 200, 204 (App.1991).

The creditor's right to levy on the property exists "to the exclusion of the rights of others that may have attached subsequent to the judgment lien." *Freeman v. Wintroath Pumps–Div. of Worthington Corp.*, 13 Ariz. App. 182, 184, 475 P.2d 274, 276 (1970), *quoted in Byers*, 169 Ariz. at 218, 818 P.2d at 203.

¶ 13 These statutes and principles do not, however, necessarily compel the rejection of the Norcutts' equitable subrogation argument. The very nature of equitable subrogation is to substitute a party into the position of another. If the Norcutts are entitled to equitable subrogation as they claim, then they would be substituted into the position of Zions Bank, and their interest would be deemed to have attached before the judgment lien.

¶ 14 "Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Mosher v. Conway*, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935). Its application allows someone who pays off a primary and superior encumbrance to be substituted into the priority position of the primary lienholder, despite recordation of an intervening lien. *Lamb Excavation, Inc. v. Chase Manhattan Mortgage Corp.*, 208 Ariz. 478, 480, ¶ 6, 95 P.3d 542, 544 (App. 2004). Equitable subrogation has four primary elements: (1) the party asserting subrogation has paid the debt; (2) the party asserting subrogation was not a volunteer; (3) the party asserting subrogation was not primarily liable for the debt; and (4) no injustice will be done to the other party by allowing subrogation. *Id.* at ¶ 8. Further, for equitable subrogation to apply,

[t]here must exist a claim or obligation against the debtor; an original right to that claim on the part of him in whose place substitution is sought, and some right belonging to him who seeks the substitution which will be protected thereby. So when one, being himself a creditor, pays another creditor, whose claim is preferable to his, it is held that the person so

---

1. The Arizona Legislature recently renumbered A.R.S. § 12–2101. *See* 2011 Ariz. Sess. Laws, ch. 304, § 1 (1st Reg. Sess.) (effective July 20, 2011).

paying is subrogated to the rights of the other creditor.

*Mosher,* 45 Ariz. at 468, 46 P.2d at 112. Equitable subrogation applies when an express or implied agreement to subrogate exists, concordant with a party's reasonable expectation of receiving a security interest, and an intervening lien claimant suffers no prejudice. *Lamb,* 208 Ariz. at 482, ¶ 13, 95 P.3d at 546. When equitable subrogation is applied, it applies only to the extent of the prior lien. *Id.* at 483, ¶ 19, 95 P.3d at 547.

¶ 15 Equitable subrogation is an equitable doctrine, the purpose of which is to prevent injustice. *Mosher,* 45 Ariz. at 468, 46 P.2d at 112. It is intended "to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it" and to prevent a windfall at the expense of another. *Rowley Plastering Co. v. Marvin Gardens Dev. Corp.,* 180 Ariz. 212, 214, 883 P.2d 449, 451 (App.1994) (citing *Kilpatrick v. Superior Court,* 105 Ariz. 413, 422, 466 P.2d 18, 27 (1970)). Application of the doctrine may be denied, however, where intervening rights would be prejudiced by the subrogation. *Peterman–Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank of Ariz.,* 2 Ariz.App. 321, 326, 408 P.2d 841, 846 (1965). "While it was originally limited to transactions between principals and sureties, it now has a very liberal application, its principle being modified to meet the circumstances of cases as they arise." *Mosher,* 45 Ariz. at 468, 46 P.2d at 112. "[T]he modern tendency is to extend its use rather than to restrict it." *Id.* The doctrine of equitable subrogation "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *Rowley,* 180 Ariz. at 214, 883 P.2d at 451 (quoting *Kilpatrick,* 105 Ariz. at 423, 466 P.2d at 28).

¶ 16 The trial court found that the Norcutts could not hold a lien on their own property. A more appropriate characterization of the issue, however, would be whether the Norcutts, as property purchasers who paid an existing encumbrance as part of the purchase price, are entitled to succeed to

priority rights of the creditor whose encumbrance they paid. *See Mosher,* 45 Ariz. at 468–69, 46 P.2d at 112.

¶ 17 Arizona courts have considered equitable subrogation in the context of mortgagees and lienholders, but have not addressed its application to one who pays off an encumbrance as part of the purchase of real property. The authority in other jurisdictions is split. *See Belcher v. Belcher,* 161 Or. 341, 87 P.2d 762, 763–65 (1939) (noting a sharp and fairly even division of authority regarding the application of equitable subrogation, and ultimately rejecting its application under the circumstances presented); 113 A.L.R. 958 (1938) (noting a fairly even division of authority on the question of subrogation).

¶ 18 For example, in *Kahn v. McConnell,* 37 Okla. 219, 131 P. 682 (1913), a property owner agreed to sell his real property if the buyer would satisfy indebtedness to a bank on the property. *Id.* at 682. The buyer settled the debt with the bank, and the seller conveyed the property. *Id.* The property was also encumbered by a junior lien, however, which had been recorded but was apparently unknown to the buyer. *Id.* The Oklahoma Supreme Court found that the buyer was not entitled to be equitably subrogated to the position of the first mortgage:

> In the matter of that payment he was a volunteer. He was under no duty to buy the land. He was under no duty to pay the first mortgage. He was negligent in doing so without examining the records, and cannot escape the consequence of his own negligence by an appeal to the equitable doctrine of subrogation.

*Id. Belcher,* after noting the division of authority, followed the reasoning of *Kahn,* saying that such a rule would make it incumbent on purchasers to check available records and minimize "the effect of any uncertainty of representation between vendor and vendee." 87 P.2d at 765.

¶ 19 Other courts have concluded that purchasers who pay off an encumbrance as part of the purchase transaction are subrogated to the position of the satisfied encumbrance as against junior liens. In *Dietrich Industries,*

*Inc. v. United States*, the Fifth Circuit Court of Appeals explained that, under Texas law, any person who pays the debt of another to protect an interest in property is subrogated to the rights of the creditor whose claim is paid. 988 F.2d 568, 571 (5th Cir.1993). Where the purchaser paid the debt as part of the purchase transaction, the purchaser is considered an "equitable assignee" of the lienholder; this "legal fiction" allows the purchaser "to keep the lien alive and enforce the lien for [his or] her own benefit." *Id.* Alabama follows a similar approach. *See Brooks v. Resolution Trust Corp.*, 599 So.2d 1163, 1164 (Ala.1992) ("When a purchaser pays off a prior incumbrance as a part of the purchase price without *actual notice* of a junior lien, ... equity will treat him as the assignee of the original incumbrance, and will revive and enforce it for his benefit." (quoting *Shields v. Hightower*, 214 Ala. 608, 108 So. 525, 528 (1926)) (emphasis added to original)).

¶ 20 A New Jersey court found that purchasers who pay off encumbrances do so "with the understanding and belief that they thereby obtained clear title" and that the satisfaction of the prior liens "cannot advance the position of an unknown junior encumbrancer at the expense of the innocent purchaser and mortgagee." *Gutermuth v. Ropiecki*, 159 N.J.Super. 139, 387 A.2d 385, 387–88 (N.J.Super.Ct. Ch. Div.1977).

¶ 21 In arguing that equitable subrogation should be available to purchasers of property who pay off a senior encumbrance, the Norcutts argue that the Restatement (Third) of Property: Mortgages § 7.6 (1997) ("the Restatement") makes no distinction between purchasers and creditors regarding the application of equitable subrogation. The Restatement provides as follows:

(a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

(b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:

(1) in order to protect his or her interest;

(2) under a legal duty to do so;

(3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or

(4) upon a request from the obligor ... to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

Restatement § 7.6. As noted by the Norcutts, this provision does not preclude the application of equitable subrogation to a purchaser paying off an encumbrance and would seem to be broad enough to encompass such a situation.

¶ 22 Sourcecorp asserts that the facts here do not satisfy the requirements for equitable subrogation under Arizona law. In support of its assertion, Sourcecorp argues that the Norcutts do not meet the requirement of paying the debt of another because the Norcutts paid the Shills, and the Shills paid their own debt. We find no significance in the fact that the funds were paid first into escrow and then distributed to the lienholder. In paying the Shills an amount sufficient to pay off the senior lien rather than merely the amount for the Shills' equity in the property, the Norcutts paid off the prior lien.

¶ 23 Sourcecorp also argues that, under *Lamb*, equitable subrogation applies only where an agreement for subrogation exists and the party seeking subrogation has a reasonable expectation of receiving a security interest. *See* 208 Ariz. at 481–82, ¶¶ 12–13, 95 P.3d at 545–46. Sourcecorp emphasizes that the facts in *Lamb* involved a lender motivated by commercial interest. *See id.* at 479, ¶¶ 1–2, 95 P.3d at 543. Sourcecorp argues that the Norcutts were purchasers rather than lenders, they had no agreement to

subrogate, and they could have had no reasonable expectation of receiving a security interest.

¶ 24 In *Lamb*, to satisfy an earlier loan for construction of a home, the Torrejons obtained permanent financing from Chase Manhattan Mortgage Corporation ("Chase"). *Id.* at ¶ 2. Lamb, a contractor, and others filed mechanics' liens against the property, and Lamb sought to foreclose its lien. *Id.* at ¶¶ 2–3. Chase moved for summary judgment, asserting it should be subrogated to the prior lender's lien position. *Id.* at ¶ 3. The trial court granted summary judgment to Lamb, finding that Chase was "a sophisticated lender" that had constructive notice of the potential for the filing of a mechanic's lien against the property when Chase made the loan. *Id.* at 479–80, ¶ 4, 95 P.3d at 543–44.

¶ 25 On appeal, this court considered the various approaches to applying equitable subrogation, found Arizona's approach consistent with the Restatement, and stated that "the question is whether a subsequent mortgagee reasonably expected a security interest with the same priority as that of the mortgage being discharged." *Id.* at 481–82, ¶¶ 10–13, 95 P.3d at 545–46. The court noted that an implied agreement to subrogate existed in the form of the loan documents, and further found that Arizona law did not require the denial of equitable subrogation where the subsequent creditor had actual or constructive knowledge of intervening liens or when the subsequent creditor was a sophisticated lender. *Id.* at 482–83, ¶¶ 15–16, 95 P.3d at 546–47.

¶ 26 Our decision in *Lamb* does not compel denial of equitable subrogation to the Norcutts. The fact that *Lamb* involved a lender motivated by commercial interests does not require the denial of equitable subrogation in other circumstances that were not before the court in that case. As for the lack of an agreement to subrogate, although *Lamb* indicates that such an agreement may be necessary for subrogation, *see id.* at 482, ¶ 15, 95

P.3d at 546, the case cited for that proposition, *Peterman–Donnelly*, does not specifically mandate such an agreement. Instead, *Peterman–Donnelly* states that where an express or implied agreement or understanding exists, subrogation will generally be applied. 2 Ariz.App. at 325–26, 408 P.2d at 845–46.[2]

¶ 27 Sourcecorp further argues that the Norcutts were not protecting a preexisting interest they held when they paid off the mortgage, but were merely purchasing property and so were "volunteers" ineligible for equitable subrogation. The Norcutts contend that they were not volunteers because they were required to pay off the Zions Bank encumbrance to protect their concurrently acquired interest in the Property. Sourcecorp argues that the interest protected must preexist the transaction based on which a party seeks subrogation, which is not the case with the Norcutts' purchase.

¶ 28 *Mosher* provides some support for Sourcecorp's position:

> [A] mere volunteer, who has no rights to protect, may not claim the right of subrogation, for one who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation or an assignment of the debt, pays the debt of another, is not entitled to subrogation, the payment in his case absolutely extinguishing the debt.

45 Ariz. at 470, 46 P.2d at 113. This language suggests that the interest to be protected must exist before and be the motivation for the payment of the prior debt. Such an interpretation would be consistent with *Kahn*, in which the Oklahoma Supreme Court found that in purchasing property and paying the existing mortgage, the party seeking subrogation was a volunteer. 131 P. at 682 ("He was under no duty to buy the land. He was under no duty to pay the first mortgage."); *accord Belcher*, 87 P.2d at 765 (adopting the reasoning of *Kahn*). Sourcecorp, however, has cited no Arizona authority that actually imposes a requirement that the

---

**2.** Some jurisdictions recognize two distinct forms of subrogation: "conventional subrogation," which is based on an express or implied agreement, and "legal subrogation" or "equita-ble subrogation," which is based on equitable principles. *See, e.g., Dietrich Indus.*, 988 F.2d at 570; *King v. Towe*, 996 P.2d 948, 950, ¶ 13 (Okla.Civ.App.1999).

interest protected must preexist the transaction.

¶ 29 The Norcutts also contend that *Mosher* supports their position, arguing that, like the purchaser in *Mosher*, they were protecting their interests when purchasing the property. The facts in *Mosher* do not fully support the Norcutts' argument.

¶ 30 In *Mosher*, Hughes purchased a lien for a street improvement assessment on certain lots. 45 Ariz. at 466, 46 P.2d at 111. Fox purchased a subsequent lien on the same property, and to protect that interest, redeemed the lien held by Hughes. *Id.* The lot owner, Mosher, redeemed the second lien, purchased by Fox, but failed to pay the amount paid by Fox to redeem the first lien held by Hughes. *Id.* at 466–67, 46 P.2d at 111. Skousen purchased a third improvement lien. *Id.* at 467, 46 P.2d at 112. "Fox was in doubt as to the effect of the purchase by Skousen under the third sale upon his interest, and paid to the superintendant of streets the proper amount to redeem from the sale to Skousen, which money was accepted by the latter." *Id.* The Arizona Supreme Court found that Fox was subrogated to the rights Hughes had acquired in purchasing the first lien because Fox had redeemed that first lien to protect his interest in the second lien. *Id.* at 469, 46 P.2d at 112. Although our supreme court found a closer question in determining what rights Fox gained from redeeming the third lien from Skousen, the court determined that, because there might be a question whether Fox's rights were superior to Skousen's (because Fox was a redemptioner rather than a purchaser), Fox was justified in redeeming the Skousen lien to protect his rights even if it was later found to be unnecessary, and so was subrogated to Skousen's rights. *Id.* at 470–71, 46 P.2d at 113.

¶ 31 Unlike the Norcutts, in *Mosher*, Fox had a preexisting interest—protecting his rights regarding the second lien and then protecting his interest in the redeemed Hughes lien—for both of the transactions in which the court found subrogation. In contrast, the Norcutts had no obvious preexisting interest to protect when the Zions Bank mortgage was paid off.

¶ 32 However, some courts have recognized that, in purchasing property and paying off an existing encumbrance, a purchaser is entitled to equitable subrogation because the payment of the debt is made to protect the purchaser's concurrently acquired interest in the property. *See Gibson v. Neu*, 867 N.E.2d 188, 200 (Ind.Ct.App.2007) ("The [purchaser and lender] did not voluntarily pay Nowak's debt to Irwin Mortgage; rather, they had a direct interest in paying the Irwin mortgage to protect their rights to the property."); *E. Boston Sav. Bank v. Ogan*, 428 Mass. 327, 701 N.E.2d 331, 336 (1998) ("The plaintiffs' payment to extinguish the original mortgage was made to protect their own interest. They did not act as 'volunteers' because they purchased the property and mortgaged it at sale."); *Joyce v. Dauntz*, 55 Ohio St. 538, 45 N.E. 900, 902 (1896) ("[W]hen a purchaser of land pays off a debt of his grantor, secured by a deed of trust upon the premises as a part of the purchase money, to protect his own property from sale, he will be subrogated to the deed of trust as against an intervening lien of the grantor. Here the payment is not voluntary, as if made by a stranger, but is made by the purchaser to protect his own interest in the property.").

¶ 33 Authority exists to support the positions of both the Norcutts and Sourcecorp. Given *Mosher*'s direction that equitable subrogation "has a very liberal application, [with] its principle being modified to meet the circumstances of cases as they arise," 45 Ariz. at 468, 46 P.2d at 112, we conclude that equitable subrogation should not be precluded on the basis that the party seeking subrogation is a purchaser of property who has paid the existing encumbrance in connection with the purchase. In paying off the encumbrance, a purchaser is protecting his or her concurrently acquired interest by ensuring clear title to the property and is therefore not a mere volunteer. That the interest did not preexist the purchase should not preclude subrogation where equity requires application of the doctrine.

¶ 34 Sourcecorp argues that the equities weigh in its favor, based primarily on its contention that the Norcutts have a reme-

dy against First American Title for its failure to identify Sourcecorp's judgment lien. Sourcecorp argues that the Norcutts can be made whole by First American Title, and that equitable subrogation should not be used to "shield" the title company. Sourcecorp does not explain, however, how it would be prejudiced if equitable subrogation were applied; in fact, it would be in the same lien position had the lien been timely discovered. Not applying equitable subrogation, on the other hand, would elevate Sourcecorp to a position higher than it was in when the lien attached, giving it a windfall at the expense of the Norcutts. This circumstance was recognized in *Lamb,* where we stated:

> We fail to comprehend the nature of the perceived prejudice or inequity, as it appears the lienholders would remain in the *same* position they occupied before subrogation if that doctrine were applied. To the contrary, without subrogation, the lienholders would receive a windfall if elevated to a higher priority status.

208 Ariz. at 483, ¶ 18, 95 P.3d at 547 (citing Restatement § 7.6 cmt. a).

¶ 35 In a related argument, Sourcecorp asserts that the fact the Norcutts had title insurance and the title company negligently failed to identify the Sourcecorp lien should in itself preclude the application of equitable subrogation. We are not persuaded under the facts presented here. The Norcutts appear as innocent victims in this scenario. Although they more than likely could be made whole monetarily by First American Title, to deny equitable subrogation on the ground that they had insurance to cover this circumstance would, in essence, punish them for being responsible and obtaining the insurance in the first place and could leave them open to losing the Property, which to them is not merely collateral as with a lender, but is their home. Granting equitable subrogation imposes no harm on Sourcecorp, which remains in the same lien position it would have been in had no error occurred, and the effect is that the Norcutts would not be paying the debt that the Shills "in justice, equity, and good conscience ought to pay." *Mosher,* 45 Ariz. at 468, 46 P.2d at 112.

¶ 36 Because we find that under these circumstances the Norcutts are entitled to be equitably subrogated to the lien position of Zions Bank, we need not address the remaining arguments raised by the Norcutts. Also, because Sourcecorp is no longer the successful party, we vacate the trial court's award of attorneys' fees to Sourcecorp. Both sides request an award of attorneys' fees pursuant to A.R.S. § 12–341.01(A). In our discretion, we decline to award attorneys' fees on appeal.

### CONCLUSION

¶ 37 Under the facts presented in this case, we hold that the Norcutts, real property purchasers who paid off the prior lien as part of the purchase price, are entitled to be equitably subrogated to the lien position of the debt they paid. We therefore reverse the judgment in favor of Sourcecorp and remand to the trial court with directions to enter judgment in favor of the Norcutts.

CONCURRING: PHILIP HALL, Presiding Judge and JON W. THOMPSON, Judge.